STATE, PLAINTIFF IN ERROR, v. LOUIS LEVIN, DEFENDANT IN ERROR.

Argued November 27, 1918—Decided March 3, 1919.

Where, on the trial of an indictment which charges both a misdemeanor and a high misdemeanor, the jury found a verdict of "guilty of the misdemeanor aforesaid" the failure of the jury to find a verdict on the counts for high misdemeanor is not cured by the fact that the punishment imposed was justified under either count.

On error to the Supreme Court. (See *State* v. *Rudner, ante* p. 20.)

For the plaintiff in error, *Martin P. Devlin* (*A. Dayton Oliphant* with him).

For the defendant in error, *John H. Kafes, Harry Heher, Aaron V. Dawes, John A. Montgomery.*

The opinion of the court was delivered by

SWAYZE, J. We are entirely satisfied with the view of the Supreme Court and should affirm on the opinion of the Chief

Justice, but for suggestions made for the first time in this court. The indictment charges both a misdemeanor and a high misdemeanor. The latter offence—grand larceny—is charged in terms appropriate to a felony at common law. The punishment of the two crimes is different and the consequence of a conviction of grand larceny in disqualifying the defendant as an elector is serious. If the verdict were a general verdict, it could, if there were no other error, be applied to any count in the indictment, and if the count was good, judgment might pass upon the verdict. This cannot be done in the present case. The verdict is not general. It is "guilty of the misdemeanor aforesaid." Such a verdict on the trial of an indictment which charges both a misdemeanor and a high misdemeanor shows most pointedly that the jury exercised discrimination and declined to find a verdict on the charge of high misdemeanor. If the state was not satisfied, it might have asked an instruction that the jury find a verdict on the count charging the more serious offence. This the state failed to do, probably because the learned prosecutor was content with the judgment that might follow the conviction of the lesser offence. He now argues that the failure of the jury to find a verdict on the counts for high misdemeanor, is cured by the fact that the punishment imposed was justified under either count. This cannot be. The prosecution for the misdemeanor was barred by the statute of limitations; no judgment could be pronounced on that count. The only counts on which a judgment could be pronounced were the counts for high misdemeanor, and on these counts there is no verdict and hence no basis for a judgment. It is not a case of defective count, but a case where the only counts on which a verdict has been found charge no crime for which a prosecution will lie.

The defendant was entitled to have the court direct a verdict in his favor on the counts for misdemeanor. The conviction is only on those counts and it was manifest error to pronounce sentence on a conviction for an alleged crime for which the legislature has said he shall not be prosecuted, tried

or punished. Criminal Procedure act, section 152 (*Comp. Stat., p.* 1870). *Moore* v. *State,* 43 *N. J. L.* 203.

It is, however, urged in this court that the verdict shown on the record is not the verdict rendered by the jury; the state seeks to have the alleged error which is now attributed to the clerk, corrected. This is beyond our power. Even if we had, or were willing to invent, a writ running from this court direct to the Mercer Sessions to have the truth certified, we could not in justice pass over the Supreme Court. We have directed our writ of error to that tribunal and required it to send us the record in their court. If we now undertook to alter that record, we should not be acting as a court of review to consider possible errors of the Supreme Court. We should be ostensibly passing on the case as it was presented to them, but really passing on an entirely different case. It is for the Supreme Court to say, when the record goes down, whether it will permit the state now to make out a new case, or whether it will consider that the state has elected, by suing out the pending writ of error after the attention of the prosecutor was called to the difficulty, to stand on the record as it is. We may properly call attention to the question whether the submission by the trial court to the jury of the counts for misdemeanor was not such an error as would be fatal even on a general verdict, which might be predicated on those counts alone. The question is not a technical one, but one of substantial justice in securing to the defendant his right to trial by jury.

Desirable as it is to punish crime, it is still more important to administer justice according to law; when that is once abandoned, we are adrift without chart or compass.

Let the judgment be affirmed and the record remitted to the Supreme Court for further proceedings, according to the practice of that court.

WALKER, CHANCELLOR (dissenting). The indictment in each of these cases contained four counts. The first one that the defendant, together with C. H. S., did unlawfully tamper

with the water meter which had been installed by the city of Trenton on his premises for the purpose of measuring and registering the amount of water used therein, and this with intent to defraud the municipality by causing the meter to register much less than the actual flow through it.    The second count was that defendant unlawfully aided, assisted and abetted C. H. S. in tampering with the meter, for the purpose of causing it to register much less than the actual flow through it.    The third and fourth counts charged the defendant and S. with unlawfully and feloniously stealing, taking and carrying away certain water of the value of $576.36 of the goods and chattels of the city of Trenton.

The trial on each indictment was separate, and the several verdicts as they were recorded by the clerk and are found in the records are as follows:    In the Cohn case:    "Guilty of the misdemeanor of aiding and abetting in tampering with water meter on him above charged in the form aforesaid and as by the indictment aforesaid is above supposed against him."    And in the Levin and Rudner cases:    "The said (defendant, naming him) is guilty of the misdemeanor aforesaid above charged in the form aforesaid, and as by indictment aforesaid is above supposed against him."

These cases were argued together here.    It was assigned for error in the Supreme Court that the trial judge refused to direct a verdict in favor of the defendant on the first and second counts of the indictment upon the ground that the offence alleged in each, if committed at all, had been committed more than two years before the finding of the indictment, and was therefore outlawed.    The record shows the proof to be that the illegal tampering occurred more than two years prior to the finding of the indictment.    It also showed that the abstraction of the water was persisted in until a period within the two years' limit.    The state contended there and here that the situation was similar to the offence of obtaining money by false pretences, in which the pretence might be anterior to two years before indictment found, while the obtaining of the money might be within the period of limitation, conviction for which would be lawful.

The Supreme Court, I think, properly held that the intent of the act of the legislature, upon which the first two counts were rested, was not the punishment of one who feloniously abstracts water, for that crime, like any other felonious taking, is dealt with in other provisions of the statute. In fact, the third and fourth counts charge the defendants with the offence of unlawful abstraction—that is, the larceny of water. I think that the Supreme Court properly held that the motion to direct a verdict of acquittal on the first and second counts should have been granted.

It was further insisted on behalf of the state that there should not be a reversal of the conviction, even if there were error in not directing an acquittal on the first and second counts, because the verdicts were general ones, and that it is the law of this state that where there are several counts in an indictment, each charging a distinct crime, a general verdict of guilty amounts to a conviction of each separate offence, and even if the verdict cannot be supported as to one or more of the crimes charged, it will be held good as to the offence described in a single good count. That is the law. *State* v. *Huggins,* 84 *N. J. L.* 254. The Supreme Court concedes that if each of the counts had charged what it calls "a simple misdemeanor," the verdict of guilty would include all the counts, and the rule of the Huggins case would apply, but holds, however, that the third and fourth counts charge a "high misdemeanor." The first and second counts · are framed on section 164 of the Crimes act *(Comp. Stat., p. 1794),* which denounces the offence as a "misdemeanor," not "simple misdemeanor;" while the last two counts are framed on section 158 of the Crimes act *(Comp. Stat., p. 1792),* which denounces the offence therein described as a "high misdemeanor."

The Supreme Court goes on to hold that the verdicts are specific, and not general, ones; that they declare each plaintiff in error to be guilty of the "misdemeanor" charged in the indictment—that is, the crime set out in the first and second counts of that pleading, and argues that to declare the findings of the juries to be a conviction of the defendants on the

last two counts would subject them to a higher penalty than that imposed for the misdemeanor. As a fact, the sentence imposed by the trial court in each case was far less than the maximum penalty for a misdemeanor, but I think that makes no difference; and I think, too, that the finding was a good conviction of the defendants on all of the counts, and that the sentences imposed being less than the maximum prescribed for a high misdemeanor are lawful, except in the case of Cohn, as will hereafter appear.

The term "misdemeanor" is synonymous with crime though not one of the gravest character. *Van Meter* v. *People,* 60 *Ill.* 168, 170. Now, if "crime" comprehends "misdemeanor," then "high misdemeanor" comprehends "misdemeanor." A misdemeanor is a misdemeanor, whether it be "high" or "low" or "simple." If the verdict had been recorded in terms "guilty as charged in the third and fourth counts," we could with perfect propriety have referred to it as a conviction of a "misdemeanor," without saying "high misdemeanor"—the latter term being efficacious only in the matter of sentence, a court and not a jury function.

The criminal laws of this state ignore the distinction between felonies and misdemeanors; statutory offences, if designated at all, are called misdemeanors or high misdemeanors. *Jackson* v. *State,* 49 *N. J. L.* 252, 255. The grade of the offence in our criminal code is determined by the character and degree of the punishment prescribed, rather than upon the common law classification of felonies or misdemeanors. *Brown* v. *State,* 62 *Id.* 666, 695.

Thus, it appears that the "misdemeanor" in our statute called a "high misdemeanor," is not necessarily an offence which was a felony at common law, and in our act it is simply descriptive of the punishment to be meted out for the offence; and with the punishment to be inflicted upon a criminal defendant the jury has nothing to do; that is the prerogative of the court. Therefore, the word was not inserted in the act with reference to any jury question, whose only function is to find the defendant guilty or not guilty of the crime charged as a fact.

I pause here to inquire where the jury in these cases got this word "misdemeanor" from? It nowhere appears in any of the indictments. It does not appear anywhere in the charges of the court. The answer is, that they did not get it anywhere or use it; that, on the contrary, it is an invention of the clerk's, so far as the verdict was concerned. And why should we say it applies to the first, instead of to the last, two counts?

Here is no question of construing a penal statute. The simple question is, What does this verdict mean in the form in which we find it in the record? And this is to be tested by the ordinary rules. The meaning of a word may be ascertained by reference to the meaning of words associated with it. *Noscitur a sociis.*

In the Levin and Rudner cases the verdict was that the defendant was *guilty of the misdemeanor*—then continuing —*aforesaid of him above charged in the form aforesaid, and as by the indictment aforesaid is above supposed against him.* These latter words about his being guilty as charged and in the form as above supposed against him, comprehensive as they are, clearly indicate a conviction on the entire indictment, and all that is in it. And here is a significant thing, one not to be overlooked, namely, that these were three separate cases, tried separately before different juries, and yet the verdict in each one is identical, except in the Cohn case, as above pointed out. This might have come from the juries themselves if the verdicts were, generally, guilty or not guilty; but these somewhat involved sentences never could have emanated *verbatim et literatim* from separate juries rendering verdicts distinct from, and not in concert with, each other. This alone makes it clearly appear that the verdicts, as written out, were made up by the clerk, and when we find in them the words "guilty, and as charged, and as is supposed," without any formula of not guilty, the only rational conclusion to be drawn is that the jury convicted the defendants generally, except, perhaps, in the Cohn case, and that the verdicts are general ones, and not specific ones, ex-

cept in the case of Cohn, and that only by construction, as will hereafter be pointed out.

If the words "misdemeanors" (plural) had been used, I presume there would be no question but that the verdicts were of guilt on all the counts. I do not think it would then be contended that the descriptive adjective "high," with reference to the offence charged in the last two counts in the indictments, could be said to restrict the convictions to the counts charging misdemeanors only, for both equally are misdemeanors, simple or high.

When necessary to give effect to legislative intent, words in the plural number are construed to include the singular, and words importing the singular are applied in the plural sense. 36 *Cyc.* 1123, and *note* 63.

In the Levin case the judge charged as follows:

"As this indictment is drawn, the jury may, according as the evidence warrants, find either a general verdict of guilty or not guilty as charged or a verdict of guilty or not guilty as to any separate count or counts."

In the Cohn case the court charged the jury as follows:

"Under this indictment, gentlemen, in case you find he is guilty of any offence, your verdict may be a general verdict as charged, or there may be a verdict of guilty as to one or more counts of the indictment and not guilty as to the others. This, of course, is assuming that the defendant is guilty at all under any count."

In the Rudner case the judge charged the jury as follows:

"Under this indictment, gentlemen, the jury may find a general verdict of not guilty, or if the facts indicate he is guilty, there may be a general verdict of guilty. On the other hand, you may find a verdict of either guilty or not guilty on any one or more of the individual counts."

Thus, it will be seen that the trial judge distinctly charged the jury in each one of these cases that they might return a general verdict of guilty or not guilty, or of guilty as to certain of the counts and not guilty as to others.

Under these clear instructions it would, to my mind, be imputing ignorance to the jury to say that they intended to convict on the first two counts and to acquit on the latter two, without having rendered any verdict of acquittal at all; although in the Cohn case a different view must be taken under the law, as I interpret it.

In *Stephens* v. *State*, 53 *N. J. L.* 245, the indictment contained a count charging embezzlement and another charging larceny, and the jury found the defendant guilty "of larceny and embezzlement as he stands charged in the indictment." On error the Supreme Court held the count in embezzlement invalid, but, as the sentence was not greater than the penalty for larceny, the judgment was affirmed. Chief Justice Beasley, speaking for the court, said (at *p.* 250) :

"Is this court constrained to intend that the judgment in question relates in any degree to the offence charged in this abortive count?

"My conclusion is a negation of the proposition. The charge of larceny is well laid in the second count in this indictment, and the judgment is in accord with the punishment for that offence here inflicted; and in such a condition of facts the principle is, that it will be intended that the tribunal pronouncing the sentence disregarded the nugatory finding, and exclusively based its action on such part of it as is valid. It has always been the rule of criminal procedure to sustain a judgment on error where there has been one good count on which it could rest, no matter to what extent it was associated with bad ones. The principle is but the outcome of the maxim touching judicial procedures, viz., *"Omnia præsumuntur esse rite acta."* In the case before us the trial court could not rightly punish but for the larceny, and, therefore, this court must infer that the punishment, notwithstanding the scope of the verdict, was restricted to that misdemeanor of which the defendant had been properly convicted. For exemplifications and statement of this legal principle, it is only necessary to refer to the ordinary textbooks. 1 *Chit. Cr. L.* 700; 2 *Burr.* 984; 1 *Arch. Cr. Pl. & Pr.* 580, *note.*

"Against this objection, therefore, this judgment must prevail."

In *State* v. *Kind,* 80 *N. J. L.* 176, in the Supreme Court, one of the exceptions was that the record failed to disclose on which count of the indictment, if any, defendants, or either of them, were convicted; and the Supreme Court, regarding this (at *p.* 177), said:

"As to this last it is sufficient to say that a general verdict of guilty operates as a conviction on all the counts, and there was evidence justifying a conviction on every count and the sentence imposed is justified under any count.   See *State* v. *Mount,* 72 *N. J. L.* 365."

In the cases at bar the issue between the state and the defendants was submitted to the jury on all four counts in the indictments against them.   And the form of their verdict was, in effect, that the defendants were guilty as charged, and there was no acquittal of anyone on any count, except, perhaps, in the case of Cohn, as will hereafter appear.

In *State* v. *Jankowski,* 82 *N. J. L.* 229, where a crime was charged, and the jury found the defendant guilty of "attempt," the Supreme Court held that upon writ of error it might deal with the case as if the verdict were set forth with technical precision as guilty of an attempt to commit the crime charged.   And Mr. Justice Swayze said (at *p.* 232) :

"The jury having found the defendant guilty clearly meant by this verdict to find him guilty of a crime.   The only crime of which they could find him guilty under the instructions of the court was an attempt to commit the crime charged in the indictment.   Unless, therefore, they meant to find him guilty of an attempt to commit that crime, their verdict was an absurdity.   That we cannot presume. Verdicts are often taken in the absence of the court by the clerk, who is not supposed to set them down with technical nicety and precision.   In fact, a mere note is made of the verdict, and it is only reduced to legal form when the record is subsequently made up.   The Essex Sessions might well have stated in the record returned to this court, the verdict

according to its legal effect, and, notwithstanding their failure to do so, we may deal with it as if the verdict were set forth with technical precision."

It is now well settled that where several counts are included in the same indictment a conviction upon one of them may be sustained, although the jury ignores the others.   12 *Cyc.* 694, and *note* 30.

Now, in the Cohn case the jury rendered a verdict of guilty of the misdemeanor of aiding and abetting in tampering with the water meter, and was silent as to the charge of stealing, taking and carrying away certain water—the larceny charge.   This differs radically from the verdicts in the Levin and Rudner cases, where each verdict was, guilty of the misdemeanor charged and as by the indictment supposed.   The form of the Cohn verdict requires, I think, a discontinuance of the prosecution against him.

In *Commonwealth* v. *Hackett,* 170 *Mass.* 194, the indictment contained ten counts.   As to one a *nolle pros.* was entered.   The jury returned a verdict of guilty on four; not guilty on three, and returned no verdict and reported no disagreement on two.   The defendant moved in arrest of judgment for the failure of the jury to act upon the two counts.   This was overruled and an appeal was taken.   The Supreme Court in affirming held that the fact that the jury failed to return a verdict on two counts of the indictment did not prevent a judgment being entered against defendant upon the counts upon which he was found guilty; the effect of the acceptance of the verdict, and the judgment consequent thereon, operated either as an acquittal of defendant on the two counts or as a discontinuance of them.

Therefore, in the Cohn case, where the jury discriminated between the charge of tampering with the meter and that of larceny of the water, specifically convicting of the first, but returning no verdict and reporting no disagreement as to the second, I think their finding may be interpreted as an acquittal of the latter, and, in any event, calls for a discontinuance of the prosecution against defendant.

Not so in the case of Levin and Rudner, where the verdicts were not specific, but general—guilty as charged and as supposed, which the word "misdemeanor" clearly interpolated by the clerk is, in my judgment, impotent to restrict and change into a finding on the first two counts alone.

While I favor an interpretation of these verdicts which will attribute to them the force of general ones, except in the Cohn case, carrying with them a verdict of guilty on the last two counts, but as the court does not agree, I think the prosecutor should be given leave to move to amend the verdicts in the Levin and Rudner cases, either by *certiorari* or by remand to the Supreme Court, with direction to further remand to the Sessions, for the purpose mentioned, so that, ultimately, the actual verdicts rendered in these cases may be brought before this court for adjudication.

In *Lefferts* v. *State,* 49 *N. J. L.* 26, a criminal case, Chief Justice Beasley, speaking for the Supreme Court, said (at *p.* 29) :

"A faulty verdict, although accredited by a *postea* signed by the judge, has always been deemed amendable, and the record has been remitted to that end by a court of error. *Delaware, Lackawanna and Western Railroad Co.* v. *Toffey,* 9 *Vroom* 525. In the case of *Apgar's Administrator* v. *Hiler,* 4 *Zab.* 808, this course was taken with a judgment that had been improperly entered. There are many similar and analogous cases in our reports to which it is unnecessary to refer.

"This being the condition of the law with respect to the correction of judicial proceedings in these important respects, it seems difficult to suggest any reasonable ground on which it can be claimed that a bill of exceptions is exempt from such a beneficial control."

The same learned Chief Justice, in another criminal case (*Acker* v. *State,* 52 *N. J. L.* 259), Supreme Court (at *p.* 261), observed:

"Nevertheless, as the record before us now stands, and unless it can be and is amended, the judgment must be re-

versed. We have before us making up what is designed to be a judgment record, composed of disjointed and imperfect fragments from the minutes of the Sessions. These memoranda are defective and incomplete in many respects. Indeed, one of their statements imports that only a part of the jury were sworn. It is impossible to treat such a farrago as the record of a judgment in a criminal case.

"The court will withhold its judgment until the prosecutor shall have an opportunity to apply for an amendment of the record."

In *Matthews* v. *Booye*, 58 *N. J. L.* 593, a civil case in the Supreme Court, it was held:

"After a judgment in the Supreme Court has been removed into the Court of Errors and Appeals by writ of error, and a return has been made to such writ, and errors assigned, and joinder therein filed, the court below will not, on a mere motion upon notice, correct and amend its record. The proper course is for the party desiring the correction or amendment to allege diminution of the record, in the appellate court and sue out a writ of *certiorari*, directed to the court below, for the amendment to be made and returned according to the truth of the case."

The views above expressed lead me to affirm in the Cohn case and to reverse in the Levin and Rudner cases.

*For affirmance*—SWAYZE, TRENCHARD, BERGEN, MINTURN, BLACK, HEPPENHEIMER, TAYLOR, GARDNER, JJ. 8.

*For reversal*—THE CHANCELLOR, WHITE, WILLIAMS, JJ. 3.