THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. ROBERT DEEGAN, PLAINTIFF IN ERROR.

Argued May 16, 1944—Decided October 17, 1944.

For the plaintiff in error, *John B. Zabriskie* and *Emil M. Wulster*.

For the defendant in error, *Waller G. Winne*, Prosecutor of the Pleas (*John J. Breslin, Jr.*, of counsel).

The opinion of the court was delivered by

PORTER, J. Robert Deegan, plaintiff in error, was convicted of murder in the first degree without recommendation of life imprisonment and was sentenced to death. (*R. S.*

2:138–4.)   He brings this writ of error to reverse the said judgment.   Reliance is placed on strict error set forth in the several assignments and, additionally, the entire record is brought up for our consideration asserting that the plaintiff in error suffered manifest harm and injury on the proceedings had at the trial.   (*R. S.* 2:195–16.)   He was tried on an indictment in which he was jointly charged with Martin Hoffman, Rugh Oberempt and Carolyn Twing with the murder of Ethel Hermann.   There was a severance as to the two women, and Deegan and Hoffman were tried together by a struck jury.   They were represented by different counsel and interposed defenses on different grounds.   Both were found guilty.   The jury recommended life imprisonment for Hoffman but not, as stated, for Deegan.

The first ground argued for reversal is that the trial court committed reversible error in overruling a peremptory challenge interposed by the plaintiff in error to Anna P. Siter, a member of the struck jury panel.   This ruling was based on the court's conclusion that the pertinent statute, *R. S.* 2:92–8, pre-empted one defendant, when two or more defendants are jointly tried, from exercising the right of peremptory challenge unless all defendants join in such challenge.   It appears that Hoffman was satisfied to have this juror sit and so did not join with Deegan in the challenge.   The statute *supra* is as follows: "Upon the trial of any indictment for which a struck or foreign jury shall be summoned and returned, five peremptory challenges each shall be allowed to the defendant and to the state."   It is clear that a defendant is given the right by this statute to have five peremptory challenges.   May he be deprived of this right where he is jointly indicted and tried with others?   We think not.   Whether he be tried separately or jointly is not within his control, and we think it makes no difference with respect to his right to the number of peremptory challenges to which he is entitled.   His challenge of this juror placed Deegan in the position of having made known his unwillingness to have her serve.   The seating of such juror under these circumstances would, we conclude, work out to the detriment of the objecting defendant so as to amount to manifest harm and injury.   We are con-

cerned with the construction which the learned trial judge applied to this statute, and we are unable to construe the statute, *supra,* to require that a peremptory challenge to a juror must be made in concert when two or more defendants are on trial together. The statutory language does not indicate that the legislature intended to make a distinction in the number of peremptory challenges allowed where defendants are tried jointly as against a situation where a separate trial for each defendant is had. In the absence of language indicating such intention we are brought to the conclusion that no such distinction was intended.

It is argued by the state that the trial court correctly interpreted the statute in ruling that the two defendants were restricted to five peremptory challenges concurred in jointly. *State* v. *Moore,* 75 *N. J. L.* 619, is relied on. This court ruled in that case that where two persons were jointly indicted and tried together, peremptory challenges should be made with the concurrence of both defendants. However, we conclude that that case is not in point because the portion of the statute which governed there is quite different and distinguishable from the instant statute *supra.* The statute there construed (*Pamph. L.* 1898, *p.* 896, § 81) read as follows: "The defendant or defendants and the Attorney-General or the prosecutor of the pleas shall each be entitled to challenge peremptorily ten of the general panel." It will be observed that defendant is considered both in the singular and in the plural from which the legislative intention seemed to be that but ten challenges were to be allowed to each side on the trial of an indictment, irrespective of whether there was one defendant or more than one. The statute applicable in the instant case, *supra,* is not so worded and is not, we think. susceptible to the same construction because it does not refer to defendants but only to a single defendant. The United States Supreme Court discussed this subject in *The United States* v. *Marchant & Colson,* 12 *Wheat.* 480 (cited in *State* v. *Moore, supra,* on another point), in which the following language was used by Mr. Justice Story:

"The Crimes Act of 1790, chapter 9, provides, in the 29th section, for the right of peremptory challenge in capital cases:

and this right, to the extent of the statute, must, in all cases, be allowed the prisoners, whether they are tried jointly or separately. Upon a joint trial, each prisoner may challenge his full number, and every juror challenged as to one, is withdrawn from the panel as to all the prisoners on the trial, and thus, in effect, the prisoners in such a case possess the power of peremptory challenge to the aggregate of the numbers, to which they are respectively entitled. This is the rule clearly laid by Lord Coke, Lord Hale, and Serjeant Hawkins, and, indeed, by all the elementary writers. * * * Whether, then, prisoners, who are jointly indicted, can, against their wishes, be tried separately, does not admit of a doubt. It remains to consider, whether they can insist upon a several trial. The sole ground upon which this claim can rest must be, if maintainable at all, that they have a right to select their jury out of the whole panel, and that as upon a joint trial, one may desire to retain a juror who is challenged by another, and, if challenged by one, he must be withdrawn as to all; this right of selection is virtually impaired. But it does not appear to us that this reasoning can, upon the principles of the common law, be supported. The right of peremptory challenge is not of itself a right to select, but a right to reject jurors. It excludes from the panel those whom the prisoner objects to, until he has exhausted his challenges, and leaves the residue to be drawn for his trial according to the established order or usage of the court. The elementary writers nowhere assert a right of this nature in the prisoner, but uniformly put the allowance of peremptory challenges upon distinct grounds. Mr. Justice Blackstone, in his commentaries (4 *Bl. Comm.* 353), puts it upon the ground, that the party may not be tried by persons against whom he has conceived a prejudice, or who, if he has unsuccessfully challenged them for cause, may, on that account, conceive a prejudice against the prisoner. The right, therefore, of challenge, does not necessarily draw after it the right of selection, but merely of exclusion. It enables the prisoner to say who shall not try him; but not to say who shall be the particular jurors to try him. The law presumes, that every juror sworn in the case is indifferent and above legal

exception; for otherwise he may be challenged for cause. What jurors, in particular, shall try the cause, depends upon the order in which they are called; and the result is a mere incident following the challenges, and not the absolute selection of the prisoner, resulting from his power of challenge."

Another ground argued for reversal is that the trial court erred in charging the jury that in considering whether to recommend imprisonment for life, if a verdict of first degree murder was arrived at, it need not confine itself to the evidence but had a right to consider anything it thought proper in arriving at its conclusion. This is what the trial court said in this regard:

"Now, while you are here, I wish to modify something I think I said to you before, in discussing a verdict of murder in the first degree coupled with a recommendation for imprisonment for life. If that should be your verdict, I think I said before that in making such a recommendation you should confine yourself to the evidence in the case. If I said that, I am in error; and I withdraw that. You have a right to consider anything that you think is proper in arriving at your recommendation, if you make such a recommendation. * * * you may consider all of the things that you ought to consider in arriving at this recommendation."

The statute which first authorized the jury to recommend life imprisonment where a conviction for murder in the first degree was rendered was enacted in 1916. (*Pamph. L., p.* 576.) This statute was construed by this court in *State v. Martin*, 92 *N. J. L.* 436. It was there held that the jury was clothed with unlimited discretion whether to recommend life imprisonment, and might exercise that discretion without restriction, not being confined to the testimony before it. In 1919 the legislature amended this statute (*Pamph. L., p.* 303, now *R. S.* 2:138–4) by providing that the recommendation for life imprisonment shall be "upon and after consideration of all the evidence." We conclude that this means that the jury was restricted in the exercise of its discretion to a consideration of the evidence brought to its attention on the trial of the issue. The court's instructions to the jury that it had "a right to consider anything that you think is proper

in arriving at your recommendation" and that "you may consider all of the things that you ought to consider in arriving at this recommendation" are clearly contrary to the statute and amount to manifest harm and injury. *State* v. *Barth,* 114 *Id.* 112.

Our conclusion is that the rulings referred to constitute reversible error. The judgment will therefore be reversed, and a discussion of further grounds for reversal becomes unnecessary.

CASE, J. (Concurring.) I concur in the conclusion that the judgment below should be reversed for the reason secondly stated in the majority opinion. I consider, however, that there was not error in the overruling of the attempted peremptory challenge.

There is no constitutional provision which requires the granting of peremptory challenges to defendants in criminal cases. Where that is so the constitutional right of defendants to trial by an impartial jury is not infringed by the statutory requirement that in cases where there are several defendants they shall be treated as a single party for the purpose of peremptory challenges. *Stilson* v. *United States,* 250 *U. S.* 583; 63 *L. Ed.* 1154; *Schaefer* v. *United States,* 251 *U. S.* 466; 64 *L. Ed.* 360. The question therefore resolves itself into one of statutory construction. The provision of section 81, Criminal Procedure Act, chapter 237, *Pamph. L.* 1898, was as follows:

"Upon the trial of any indictment where twenty peremptory challenges are not allowed, the defendant or defendants and the attorney-general or the prosecutor of the pleas shall each be entitled to challenge peremptorily ten of the general panel of jurors summoned and returned by the sheriff or other officer; and upon the trial of any indictment in cases where the defendant is entitled to twenty peremptory challenges, the attorney-general or prosecutor of the pleas shall be entitled to challenge peremptorily, and without assigning any cause, twelve of the jurors returned for the trial of such indictment, and upon the trial of any indictment for which a struck or foreign jury shall be summoned and returned,

five peremptory challenges each shall be allowed to the defendant and to the state; challenges in all cases may be made at any time before the jury is sworn; all challenges to the array or to individual jurors, for any cause whatever, shall be triable by the court."

The interpretation of that section given by Mr. Justice Reed in writing the opinion for this court in *State* v. *Moore*, 75 *N. J. L.* 619, was as follows:

"This construction of the statute is put upon the legislative language, namely, 'The defendant or defendants and the attorney-general or the prosecutor of the pleas shall each be entitled to challenge peremptorily ten of the general panel.' *Pamph. L.* 1898, *p.* 896, § 81. When two or more are on trial jointly. it would seem that they must join in their challenges. The statute obviously does not mean that one shall be limited to five challenges and the other to five challenges, or that the first defendant who challenges shall defeat the right of his joint defendant to challenge. That defendants shall have the right to challenge ten means that they collectively must challenge or assent to the challenge, and that each shall have a right to say whether a challenge shall be interposed."

That was said of a jury drawn from the general panel. In the instant case there was a struck jury, but the reasoning of the opinion would carry through to that situation. By chapter 220. *Pamph. L.* 1930, section 81 was changed in certain other respects, but the provision regarding challenges under struck juries was preserved except that the word "defendant" was made to read "defendant or defendants." The 1937 Revision, 2 :92–8, reverted to the reading of the 1898 statute. *supra,* namely:

"Upon the trial of any indictment for which a struck or foreign jury shall be summoned and returned, five peremptory challenges each shall be allowed to the defendant and to the state."

A further provision in the Revision, 1 :1–2, provides that "whenever, in describing or referring to any person. party. * * * any word importing the singular number * * * is used. the same shall be understood to include and to apply

to several persons or parties as well as to one person or party * * *." I take it that the word "each" is used collectively, in the one instance referring to "the defendant or defendants" and in the other instance to the "state." If it had been the purpose of the legislature to alter the meaning thus given by judicial construction, the change would have been more clearly stated. When a statutory provision is re-enacted in the same language, the later act is presumed to have adopted the earlier one with the meaning which has already been ascribed to it by judicial construction. *Cook* v. *Bennett Gravel Co.,* 90 *N. J. L.* 9; *Loudon* v. *Loudon,* 114 *N. J. Eq.* 242, 250; *State* v. *Moresh,* 122 *N. J. L.* 77, 79.

Moreover, it is a fair presumption that a rearrangement of a statute, done under the authority of chapter 73, *Pamph. L.* 1925, to "revise, simplify, arrange and consolidate all the public acts" and authenticated (*R. S.* 1937, *p. XIII*) by the commission, along with all the extant general public acts, as "revised, simplified, arranged and consolidated" pursuant to that statute, and enacted without change by the legislature as an integral part of the revision, was, unless there is convincing reason to the contrary, intended to retain the legal effect of the old law.

I am authorized to say that the Chancellor, Justices Parker, Donges and Heher, and Judge Wells concur herein. Judge Dill concurs in the remarks concerning the peremptory challenge.

*For affirmance*—DILL, J. 1.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, JJ. 15.