751 A.2d 158 (2000)
331 N.J. Super. 122
Kathleen McKEAND, Plaintiff-Respondent,
v.
Ronald F. GERHARD, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued April 12, 2000.
Decided May 31, 2000.
Edward L. Thornton, Rahway, for defendant-appellant (Methfessel and Werbel, attorneys; Mr. Thornton on the brief).
Joel A. Leyner, Secaucus, for plaintiff-respondent (Chasan, Leyner, Bariso & Lamparello, attorneys; Mr. Leyner of counsel, Bruce M. Glassner, on the brief).
Before Judges BAIME, EICHEN and WECKER.
The opinion of the court was delivered by WECKER, J.A.D.
The sole issue on this appeal is whether the trial court erred in granting prejudgment interest on that portion of the jury's personal injury award that represents future lost wages. We conclude that the trial court followed the law as it now stands, and we therefore affirm. See Ruff v. Weintraub, 105 N.J. 233, 519 A.2d 1384 (1987); Statham v. Bush, 253 N.J.Super. 607, 602 A.2d 779 (App.Div.1992) (following Ruff, while urging review of the issue); R. 4:11-2(b).[1] We add these comments.
*159 Both Ruff and Statham recognized that so long as future economic losses are separately awarded, there is a rational argument against awarding prejudgment interest on the present value (as of the trial date) of a future stream of income. In Ruff, the Court said: "[t]he applicability of a compensation rationale for prejudgment interest may be questionable in the case of future losses, since it can be argued that those damages accrue after the judgment." 105 N.J. at 245, 519 A.2d 1384 (emphasis added). The Court nevertheless found that "encouraging settlements is an adequate independent basis for the application of the prejudgment interest rule in this case." Id. The Court at footnote 6 in Ruff referred the matter to the Civil Practice Committee, citing Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983). There the United States Supreme Court suggested that prejudgment interest on a stream of earnings would be appropriate if those earnings were discounted back to the date of injury rather than the date of judgment. Jones & Laughlin Steel, 462 U.S. at 538 n. 22, 103 S.Ct. at 2551 n. 22, 76 L.Ed.2d at 784 n. 22.
Plaintiff here suffered significant injuries as a result of a defective repair to the steps of an apartment building owned by defendant. Approximately four years after her injury, the jury awarded plaintiff the following damages:

 Past medical expenses $ 58,200
 Future medical expenses $ 6,000
 Past lost wages $ 100,000
 Future lost wages $ 350,000
 Pain, suffering, disability, loss of $ 500,000
 enjoyment of life
 __________
 TOTAL $1,014,200

As a basis for an award of future lost wages, the parties stipulated to the flat sum of $37,550 for each future year of plaintiff's lost earnings, without discounting to present value. Although plaintiff sought compensation for fourteen years of future loss at $37,500 per year, for a total of $525,000, the jury awarded $350,000 as future lost earnings, obviously concluding that plaintiff was likely to have continued working for somewhat less than ten years. We have considered whether by expressly omitting any discount to present value, the parties' stipulation itself establishes an "exceptional case" under R. 4:42-11(b). However, the stipulated annual loss actually may reflect an average of present values over some number of years and not a failure to account for the time value of money.[2] We cannot say that the stipulation justifies an "exceptional case" exception to the prejudgment interest rule. See Ruff, supra, 105 N.J. at 245, 519 A.2d 1384.
The time value of money has long been recognized as an essential factor in calculating a fair damage award. Recently the Supreme Court reiterated "the firm obligation [on trial courts] to provide guidance to juries on the relevance of work-life expectancy tables and `the determination of the present or current value of such an award.'" DeHanes v. Rothman, 158 N.J. 90, 103, 727 A.2d 8 (1999) (quoting Caldwell v. Haynes, 136 N.J. 422, 441, 643 A.2d 564 (1994)) (emphasis added). Discounting a future economic loss to present value and awarding prejudgment interest on a past economic loss are corollaries of the same principlethat a sum of money available for investment on Day One is worth more than the same sum available at some later date. It is axiomatic that the jury must be instructed on the present value of a future stream of earnings and on an acceptable *160 method for discounting each element of future economic loss to present value. In Jones & Laughlin Steel, the Court wrote:
Thus, although the notion of a damage award representing the present value of a lost stream of earnings in an inflation-free economy rests on some fairly sophisticated economic concepts, the two elements that determine its calculation can be stated fairly easily. They are: (1) the amount that the employee would have earned during each year that he could have been expected to work after the injury; and (2) the appropriate discount rate, reflecting the safest available investment. The trier of fact should apply the discount rate to each of the estimated installments in the lost stream of income, and then add up the discounted installments to determine the total award.
[462 U.S. at 537, 103 S.Ct. at 2551, 76 L.Ed.2d at 783-84.]
Compare DeHanes, 158 N.J. at 103, 727 A.2d 8 (future economic loss must be reduced to present value), with Friedman v. C & S Car Service, 108 N.J. 72, 78-79, 527 A.2d 871 (1987) (future non-economic loss is not subject to discounting to present value).
One justification for the award of pre-judgment interest is that the defendant has had the use of the money and the plaintiff has been denied its use. That justification is not borne out, however, with respect to a future economic loss. This very simple example will illustrate why that is so.
If we assume a 5% annual simple interest rate, with no inflation factor, $100 invested today will grow, and is therefore the equivalent of $105 one year from today, $110.25 two years from today, and so on. But $100 today would have been produced by investing $95.24 at 5% one year ago, or $90.70 invested two years ago. Thus a jury's determination that a plaintiff is entitled to $105 one year from today would be satisfied if she received $100 today, and would also have been satisfied if she had received $95.24 one year ago, or $90.70 two years ago. Those are the sums the defendant has been free to invest or use, and by paying $100 today, defendant is accounting for prejudgment interest on those sums. By contrast, if a defendant who owes plaintiff $100 today (to enable her to have $105 in one year) is also required to pay 5% interest on that $100 from the date of the complaint,[3] plaintiff would receive more than $100 today, thereby producing more than $105 one year from today. It appears that plaintiff is gaining a windfall, and defendant is suffering a penalty, unless the future loss is first discounted not to its "present" value as of the judgment date, but back to the date of injury. See Jones & Laughlin Steel, 462 U.S. at 538, n. 22, 103 S.Ct. 2541.[4]
The Supreme Court in Ruff recognized the Jones and Laughlin Steel analysis, but nevertheless concluded that the imposition of prejudgment interest on future losses was justified by its value as an incentive "to encourage settlement." 105 N.J. at 245, 519 A.2d 1384. That, of course, is a policy decision that the Court has made, in recognition of the rationale set forth in *161 Busik v. Levine, 63 N.J. 351, 359, 307 A.2d 571 (1973):
There is also a public stake in the controversy, for tort litigation is a major demand upon the judicial system. Delay in the disposition of those cases has an impact upon other litigants who wait for their turn, and upon the taxpayers who support the system. And here there is a special inducement for delay, since generally the claims are covered by liability insurance, and when payment is delayed, the carrier receives income from a portion of the premiums on hand set aside as a reserve for pending claims. Hence prejudgment interest will hopefully induce prompt defense consideration of settlement possibilities.
The Supreme Court in Ruff left open the possibility that "exceptional circumstances," as provided by R. 4:42-11(b), might warrant suspension of prejudgment interest. For example, in Green v. General Motors Corp., 310 N.J.Super. 507, 709 A.2d 205 (App.Div.), certif. denied, 156 N.J. 381, 718 A.2d 1210 (1998), we found that $8.5 million in prejudgment interest on a $13.3 million award for future medical expenses and future lost earnings was "exceptional" and should not stand. Our decision here is consonant with our conclusion in Statham, where Judge (now Justice) Long concluded that despite the Court's "less than enthusiastic imprimatur in Ruff, where the applicability of the compensation rationale for prejudgment interest on future losses was characterized as `questionable'... given the presently articulated standards in Busik and Ruff, nothing about this case warrants suspension of the prejudgment interest rule." 253 N.J.Super. at 618, 602 A.2d 779.
We affirm.
NOTES
[1] R. 4:42-11(b) provides, in pertinent part:

Except where provided by statute with respect to a public entity or employee, and except as otherwise provided by law, the court shall, in tort actions, including products liability actions, include in the judgment simple interest, calculated as hereafter provided, from the date of the institution of the action or from a date 6 months after the date the cause of action arises, whichever is later, provided that in exceptional cases the court may suspend the running of such prejudgment interest.
[2] At oral argument, both sides agreed that they entered into the stipulation simply to make the jury's task easier, and to avoid a complex present value charge, but disclaimed any actual calculation of the discount.
[3] Or from six months after the injury, whichever is later. See R. 4:42-11(b).
[4] At one time it was thought appropriate to distinguish between compensating a plaintiff "for the loss of time from his work which has actually occurred up to the time of trial" and compensating him "for the time which he will lose in the future." This suggested that estimated future earning capacity should be discounted to the date of trial, and a separate calculation should be performed for the estimated loss of earnings between injury and trial.

It is both easier and more precise to discount the entire lost stream of earnings back to the date of injurythe moment from which earning capacity was impaired. The plaintiff may then be awarded interest on that discounted sum for the period between injury and judgment, in order to ensure that the award when invested will still be able to replicate the lost stream.
[Id. Citations omitted.]