806 A.2d 826 (2002)
354 N.J. Super. 256
John WIESE, Plaintiff-Appellant,
Elizabeth Wiese, Plaintiff-Respondent/Cross-Appellant,
v.
Jamir D. DEDHIA and Rutgers Casualty Insurance Company, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted September 11, 2002.
Decided September 30, 2002.
*827 Westmoreland, Vesper & Schwartz, attorneys for plaintiff-appellant, John Wiese, and plaintiff-respondent/cross-appellant, Elizabeth Wiese (Kathleen E. Beers, Mark A. Demarco, Hammonton, and R.C. Westmoreland, on the brief).
Youngblood, Corcoran, Lafferty, Stackhouse, Hyberg & Waldman, attorneys for defendants-respondents (Mary D'Arcy Bittner and Chad M. Sherwood, on the brief).
Before Judges CONLEY, NEWMAN and PARRILLO.
The opinion of the court was delivered by
PARRILLO, J.A.D.
This case involves dual issues concerning the applicability of both: (1) R. 4:58-1 to husband and wife plaintiffs whose offer of judgment was rejected by defendant; and (2) R. 4:42-11(b) to an award of future lost earnings. The trial judge found these rules inapplicable and therefore denied plaintiffs' request for attorney's fees, costs and interest, as well as plaintiff husband's request for pre-judgment interest on his award of future lost income. We reverse these determinations. We further find that the issues raised by defendant on cross appeal are without merit and do not warrant discussion in a written opinion. R. 2:11-3(e)(1)(A) & (E).
*828 Plaintiffs John and Elizabeth Wiese, husband and wife, filed this automobile negligence action against defendant Jamir Dedhia to recover for their personal injuries and for the wife's loss of services and consortium. Plaintiffs' claims were submitted to mandatory arbitration, N.J.S.A. 39:6A-25a and R. 4:21A-1(a)(1). The arbitrators awarded damages of $60,000 to husband and $17,500 to wife. Defendant rejected the arbitration award and demanded a trial de novo. R. 4:21A-6.
Prior to trial, plaintiffs tendered a joint offer of judgment for $75,000 within the time prescribed by R. 4:58-1. The offer was not accepted by defendant who neither requested that the offer be broken down individually between the Wieses nor countered with an itemized offer of settlement. The case was then tried before a jury which found defendant 95% negligent and awarded compensatory damages of $83,814 to John Wiese and $20,336 to Elizabeth Wiese.[1]
John Wiese's post verdict application for pre-judgment interest on that portion of his award representing future lost earnings was rejected by the trial judge who instead allowed $7,452.62 in pre-judgment interest on the other components of the husband's damage verdict. The trial judge also allowed $4,062 in pre-judgment interest to Elizabeth Wiese who received no damages for future lost earnings.
Both plaintiffs then sought an award of counsel fees, costs and interest against defendant and his insurer, Rutgers Casualty[2], pursuant to R. 4:58-1, commonly referred to as the offer of judgment rule, which entitles a claimant who obtains a verdict equal to or exceeding the rejected offer to costs, interest and reasonable attorney's fees. However, an exception to this general rule states that in a negligence action, as here, counsel fees are recoverable only if the verdict exceeds 120% of the offer. Plaintiffs' combined award of more than $90,000 qualified as being in excess of 120% of the $75,000 joint offer. Defendants opposed on the ground that R. 4:58-1 only allows separate offers from individual parties and, in any event, neither plaintiff is eligible thereunder since the larger adjusted award of $79,243.30 to John Wiese, exclusive of pre-judgment interest,[3] does not exceed 120% of the rejected offer of $75,000. The trial court agreed with defendants' argument and denied plaintiffs' application, reasoning:
[O]ne of the problems is that when you talk jointly, you're offering a package..... [O]ften you have joint demands... usually and especially with a husband and wife scenario or sometimes a parent/child scenario. It's the same family; the money is going to go into the same coffer. It really is irrelevant how it's divided up or whacked up. They could care less. But it's not always a joint demand, even when one represents both ... And they're not always *829 settled ... together. I mean there are all different approaches that are made.
But if you have a situation where two people have individual claims and only an approach is taken by plaintiffs that a joint offer of demand is made, it could well be ... that maybe one of the litigants and the insurance company could reach an accord on the value of that case. But the carrier is precluded from reaching an accord on that case when he disagrees with the value of the second independent, individual case. And therefore, because they cannot settle the other, the second of the two cases, they're forced to go to trial on both and risk the increased exposure that's attendant to a verdict like this where the percentages meet an allowance of fees and awards. Had they been allowed to settle one case, they could have reduced that exposure....
I don't think that the offer of judgment was designed to accomplish a result that [Plaintiff] is arguing here.... It may be in this case that maybe the carrier could have settled one of those two cases if they had an individual demand. But they were precluded from settling it because they were met with a joint demand and that increased their exposure for fees and costs appreciably. And I think that's that problem with the joint offer of demand. So I think that the joint demand was inappropriate and improper. And accordingly, that the defendant would not be responsible for fees and costs.

I
Under the trial court's view of R. 4:58, husband and wife plaintiffs with both individual and derivative claims, no known or apparent conflict of interest, and desirous of resolving the entire case, would be required to make separate offers of judgment. We disagree. We find nothing in the language or policy of R. 4:58 that requires this kind of bifurcated, piecemeal approach to the submission of offers of judgment.
The plain language of Rule 4:58-1 sets out the time and manner of making an offer:
[A]ny party may, at any time more than 20 days before the actual trial date, serve upon any adverse party, without prejudice, and file with the court, an offer to take judgment in the offeror's favor ... for a sum stated therein or for property or to the effect specified in the offer. [emphasis added.]
Defendants' only argument against its application here is that R. 4:58-1 speaks of "party" in the singular rather than plural, and therefore only an individual offer of settlement made by a single plaintiff or "party" qualifies if that particular plaintiff or "party" subsequently is awarded a greater judgment.
This argument, however, runs counter to the general rule of construction in the analogous area of statutory interpretation that singular terms in a statute include the plural form of the term. N.J.S.A. 1:1-2. See also Borough of Glassboro v. Patrolmen's Benevolent Ass'n Local 178, 149 N.J.Super. 254, 258, 373 A.2d 698 (App. Div.1977); State v. Deegan, 132 N.J.L. 261, 267, 39 A.2d 481 (E. & A.1944); State v. Levin, 92 N.J.L. 553, 560, 108 A. 10 (E. & A.1919). Although there is no direct authority on the precise issue raised by defendants, the most straightforward reading of R. 4:58-1 suggests that litigants are permitted to determine the conditions of settlement, including terms, as here, that provide for joint judgment. In other words, "the effect specified in the offer," R. 4:58-1, in this case, would be a joint, contingent resolution for both plaintiffs. *830 Nothing in R. 4:58-1, either expressly or by implication, precludes this manner of making an offer.
This interpretation of R. 4:58 also best serves its "salutary purpose of encouraging settlement," Frigon v. DBA Holdings, Inc., 346 N.J.Super. 352, 354, 787 A.2d 966 (App.Div.2002), by "impos[ing] financial consequences on a party who rejects a settlement offer that turns out to be more favorable than the ultimate judgment." Schettino v. Roizman Dev., Inc., 158 N.J. 476, 482, 730 A.2d 797 (1999). Here, the spousal claims arise out of the same transaction and, at least with respect to the wife's derivative per quod claim, are inextricably linked. Indeed, they "are ordinarily settled or tried together." Coughlin v. Morell, 222 N.J.Super. 71, 74-75, 535 A.2d 1004 (App.Div. 1987) (citation omitted). In these circumstances, "the determination of a reasonable settlement offer involves an overall evaluation of the controversy," Firefreeze Worldwide, Inc. v. Brennan and Assocs., 347 N.J.Super. 435, 441, 790 A.2d 238 (App. Div.2002), which could be unduly complicated by attempting to assign separate values to plaintiffs' personal injury claims, as well as one's spouse's derivative per quod claim. Such a requirement would be at odds with the evident purpose of R. 4:58, which is "to increase [its] utility ... by making it more consistent with the way attorneys actually review and evaluate their cases and prepare them for trial." Pressler, Current N.J. Court Rules, comment on R. 4:58 (2003). Therefore, the offer of judgment rule's effectiveness in promoting the settlement of litigation would be undermined if it were construed to require spousal plaintiffs with interrelated claims, in the absence of any conflict of interest, to submit separate offers of judgment.
In addition, if R. 4:58 were construed to require separate offers of judgment in such cases, in those instances where only one such offer is accepted, it would not resolve the entire litigation. "Such tactical use of the offer of judgment rule could pose a risk of unfairness to some litigants, compare Schettino v. Roizman Dev., Inc., supra, 158 N.J. at 483-86, 730 A.2d 797, and would be of only limited value in conserving judicial resources." Firefreeze Worldwide, Inc. v. Brennan and Assocs., supra, 347 N.J.Super. at 442, 790 A.2d 238. That result would also contravene the clear intention of R. 4:58 to "address and obviate piecemeal offers or acceptances thereunder by either a claimant or defendant in multi-party actions[.]" Schettino v. Roizman Development, 310 N.J.Super. 159, 168, 708 A.2d 446 (App. Div.1998), aff'd, 158 N.J. 476, 730 A.2d 797 (1999). Thus, for example, in cases of multiple claims, we have held that R. 4:58 authorizes a plaintiff against whom a counterclaim has been filed to submit an offer of judgment for resolution of the entire case, including the counterclaim. Firefreeze Worldwide, Inc. v. Brennan and Assocs., supra, 347 N.J.Super. at 442, 790 A.2d 238. And in cases of multiple defendants, R. 4:58-2 permits plaintiffs to act in respect of the total judgment. "The intention of this provision is to permit the claimant to deal exclusively in terms of the total judgment rather than to require him to accept pro rata shares from individual defendants." Pressler, Current N.J. Court Rules, comment on R. 4:58-2 (2003). Consequently, "the claimant need only state the total amount of the judgment he seeks and no individual defendants' offer to pay a pro rata share thereof shall be deemed to be an acceptance." Ibid. See also Schettino v. Roizman Dev., Inc., supra, 158 N.J. at 478, 483-84, 730 A.2d 797.
To be sure, we recognize potentially unreasonable consequences of a more expansive interpretation extending R. 4:58-1 to *831 all cases of multiple plaintiffs. In some cases involving unrelated plaintiffs with entirely distinct claims, a potential conflict of interest may arise in allocating an aggregate settlement award in a way acceptable to all of them. In other situations involving multiple plaintiffs, the aggregate jury award might exceed a rejected joint settlement offer, but the damages awarded to one or more individual plaintiffs might be lower than the amount the defendant would have considered a proper settlement amount for that particular plaintiff. In such cases, construing R. 4:58-1 to include joint settlement offers may deprive the defendant of the ability to evaluate each individual offer separately and may well overstep the purpose of the rule by forcing settlement of a lawsuit appropriately left for resolution by trial. See De Mars v. La Pour, 123 Wis.2d 366, 366 N.W.2d 891 (1985); White v. General Casualty Co. of Wisconsin, 118 Wis.2d 433, 348 N.W.2d 614 (Ct.App.1984).
Neither of these concerns, however, is implicated in this case of spousal claimants. As noted, no real or apparent conflict of interest has ever been claimed. And as for the prospect of unfair leverage in those cases where as to individual plaintiffs a settlement offer would have been legitimately rejected, we simply note that here, defendant never even responded to plaintiffs' joint offer, much less requested a breakdown of the offer individually as between the two, or submitted an itemized counteroffer of its own. Although there is no known requirement that plaintiffs settle their claims individually, a defendant may still gain the benefits of the offer-of-judgment rule by responding to the joint offer of plaintiffs. Contrary to the trial court's intimation in this case, a defendant does not lose the right to settle part of the case and therefore limit its exposure when a joint offer is presented. Rather, a defendant may make an offer to each claimant individually to allow judgment to be taken against it, irrespective of a claimant's offer. R. 4:58-1, -3. In any event, there appears to be no greater difficulty in evaluating a joint offer representing the total value of plaintiffs' claims where one is largely derivative of the other than when separately presented.
We discern no prejudice to defendant by the rule's application to the joint offer tendered by plaintiffs in this case. Consistent with its policy and purpose, we conclude that R. 4:58-1 authorizes spousal plaintiffs with interrelated claims and no real or apparent conflict of interest to submit a joint offer of judgment for resolution of the entire case. Thus, if defendant rejects the invitation, defendant may bear the rule's financial consequences where the aggregate judgment in a negligence case exceeds 120% of the joint offer. R. 4:58-2.[4]
As with our limited ruling on the application of R. 4:58-1, we need not determine whether damage awards to different parties should be combined in any other circumstances for purposes of crossing the *832 120% threshold, because we are satisfied that, in this instance, at the very least, a per quod award should be combined with the award to the injured spouse in determining the parties' eligibility for costs, interest and counsel fees under R. 4:58. Cf. Coughlin v. Morell, supra, (holding that in determining whether a party demanding a trial de novo after an automobile arbitration award "has obtained a verdict at least 20 percent more favorable than the award" to qualify for counsel fees and litigation costs under R. 4:21A-6(c)(1), the principal claim of an injured party and any derivative claim of a spouse for loss of services and consortium should be considered together). In fact, our court rules require a per quod claim to be joined with the claim of the injured party in a single action. R. 4:28-3(b). Cf. Ekalo v. Constructive Service Corp. of America, 46 N.J. 82, 91-92, 215 A.2d 1 (1965). As we noted in Coughlin, supra, "in view of the close connection" between these claims, it is appropriate to consider them in combination. 222 N.J.Super. at 75, 535 A.2d 1004.
In this case, plaintiff John Wiese's adjusted award of $79,243.30 did not exceed 120% of the $75,000 joint offer, which amounts to $90,000. However, plaintiff Elizabeth Wiese was awarded $12,640 for her derivative per quod claim. Even when the per quod damages are reduced to $12,008 to reflect John's 5% comparative negligence, Portee v. Jaffee, 84 N.J. 88, 101-02, 417 A.2d 521 (1980), the combined award of $91,251.30 exceeds 120% of the joint offer and therefore qualifies plaintiffs to recover costs, interest and reasonable attorney's fees under R. 4:58-2.

II
In denying pre-judgment interest for future lost earnings, the trial judge reasoned:
The prejudgment interest shall run on the past lost earnings claim of each plaintiff. Mrs. Wiese did not have a future lost earnings award; Mr. Wiese did. The future loss of earnings represents losses "to be incurred in the future." These are losses which have not yet accrued to the plaintiff as of the date of the verdict. A jury would calculate future interest and inflation in determining the present day value of the future loss. I do not see that loss as being the rationale for which prejudgment interest is predicated; accordingly, my ruling is that no prejudgment interest shall accrue to the future loss of earnings claim.
Again we disagree. R. 4:42-11(b) provides in pertinent part:
Tort Actions. Except where provided by statute with respect to a public entity or employee, and except as otherwise provided by law, the court shall, in tort actions, including products liability actions, include in the judgment simple interest, calculated as hereafter provided, from the date of the institution of the action or from a date 6 months after the date the cause of action arises, whichever is later, provided that in exceptional cases the court may suspend the running of such prejudgment interest.
Tort awards are subject to pre-judgment interest save in exceptional cases where the court has discretion to "suspend the running of such pre-judgment interest." Id. See also Ruff v. Weintraub, 105 N.J. 233, 245, 519 A.2d 1384 (1987); Busik v. Levine, 63 N.J. 351, 359, 307 A.2d 571 (1973), appeal dismissed, 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733; McKeand v. Gerhard, 331 N.J.Super. 122, 751 A.2d 158 (App.Div.2000), appeal dismissed, 167 N.J. 618, 772 A.2d 925 (2001); Statham v. Bush, 253 N.J.Super. 607, 602 A.2d 779 (App.Div.1992). Here, there has been no finding below that this is an exceptional *833 case and we discern no basis in the record for such a determination. Compare Green v. Gen. Motors Corp., 310 N.J.Super. 507, 533, 709 A.2d 205 (App.Div.), certif. denied, 156 N.J. 381, 718 A.2d 1210 (1998) (case that took seven years to reach trial and thus would amount to $8,500,000 interest on a verdict for $13,305,860.35 for future medical expenses and future lost earnings is an extraordinary case excepted by R. 4:42-11(b)).
The decision whether an exceptional case exists must be made in light of the "policy, spirit and intent of the rule," which the court in Ruff v. Weintraub, supra, explained:
There are two policy reasons for Rule 4:42-11(b), which provides that prejudgment interest shall be assessed at 12% per annum on all judgments in tort actions except in "exceptional cases." The first reason is to compensate the plaintiff for the loss of income that would have been earned on the judgment had it been paid earlier. See Busik v. Levine [] 63 N.J. [351,] 359, 307 A.2d 571 (1973); Kotzian v. Barr, 152 N.J.Super. 561, 565, 378 A.2d 256 (App.Div.1977). During the pendency of the trial, defendant has had the use of the money, and has been able to earn interest on it, even though it was later determined to rightfully belong to the plaintiff. The second policy reason for Rule 4:42-11(b) is to encourage settlement. As this Court reasoned in Busik v. Levine, supra, 63 N.J. at 359, 307 A.2d 571,
[t]here is also a public stake in the controversy, for tort litigation is a major demand upon the judicial system. Delay in the disposition of those cases has an impact upon other litigants who wait for their turn, and upon the taxpayers who support the system. And here there is a special inducement for delay, since generally the claims are covered by liability insurance, and when payment is delayed, the carrier receives income from a portion of the premiums on hand set aside as a reserve for pending claims. Hence prejudgment interest will hopefully induce prompt defense consideration of settlement possibilities. [citation omitted.]
[105 N.J. at 244-45, 519 A.2d 1384.]
In contrast to the combined, general lost earnings award in Ruff v. Weintraub, the jury's verdict in Statham v. Bush specified separate awards for both past and future earnings. The trial judge assessed prejudgment interest on the entire award including that portion representing lost future earnings. We affirmed the result on appeal holding that "it would be appropriate for the trial court to include prejudgment interest on both past and future losses." Statham v. Bush, supra, 253 N.J.Super. at 617, 602 A.2d 779 (emphasis added) (quoting Ruff v. Weintraub, 105 N.J. at 246, 519 A.2d 1384). We reasoned that if the Ruff court meant to adopt the defendant's contrary interpretation of the rule:
it could have directed the trial judge to fashion the jury interrogatories to break out past and future lost wages and ordered the application of prejudgment interest only to the former, suspending the running of interest on the latter as an "exceptional case" within the meaning of R. 4:42-11(b). This it did not do....
[Id. at 617, 519 A.2d 1384.]
It may be argued, of course, that since future losses accrue after judgment, the compensation rationale for pre-judgment interest may be questionable, Ruff v. Weintraub, supra, 105 N.J. at 245, 519 A.2d 1384, or that such an award if not discounted to present value as of the date of injury, provides a windfall to a plaintiff. *834 McKeand v. Gerhard, supra, 331 N.J.Super. at 126-27, 751 A.2d 158. Nevertheless, plaintiffs in this case made a bona-fide, good-faith offer to avoid trial and settle all issues, including damages for lost wages, that was less than the arbitrator's award. In declining plaintiffs' terms for settlement, defendant withheld compensation from plaintiffs to its benefit, having enjoyed the use of that money throughout the pendency of the claim, including trial, and presumably earning profits thereon. And if this rationale may be considered less than fully persuasive, "the public interest in encouraging settlements is an adequate independent basis for the application of the pre-judgment interest rule in this case." Ruff v. Weintraub, 105 N.J. at 245, 519 A.2d 1384. Indeed, the policy interests in encouraging settlements are overriding. See McKeand v. Gerhard, supra, 331 N.J.Super. at 126-27, 751 A.2d 158; Statham v. Bush, supra, 253 N.J.Super. at 616, 602 A.2d 779.
In sum, this is not an "exceptional" case, as that term has been interpreted. Therefore, it was error for the trial judge not to have awarded pre-judgment interest on plaintiff John Wiese's entire award pursuant to R. 4:42-11(b).

III
Lastly, we turn to defendant's cross appeal. As noted at the outset, defendant's contentions are without merit. R. 2:11-3(e)(1)(E). From a review of the record we are satisfied that the trial judge properly exercised his discretion in his evidential rulings. And as a final matter, we decline to dismiss plaintiff Elizabeth Wiese's appeal as time barred, finding good cause for her 10-day late filing and no prejudice to defendant. R. 2:4-4.

IV
Accordingly, the orders denying plaintiffs' application for attorney's fees, costs and interest pursuant to Rule 4:58 and for pre-judgment interest on the future lost earnings portion of John Wiese's award are reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion. Jurisdiction is not retained.
NOTES
[1] The $83,414 award to John Wiese included $17,171 for past lost earnings, $44,518 for future lost earnings, and $22,125 for non-economic loss, which, when adjusted for the 5% comparative negligence attributed to Mr. Wiese, actually totaled $79,243.30. Elizabeth Wiese's award of $20,336 included $1,446 for past lost earnings, $6,250 for non-economic losses, and $12,640 for loss of consortium.
[2] Defendant Rutgers Casualty had been joined as an interested party pursuant to R. 4:59-3.
[3] See Lobel v. Trump Plaza Hotel & Casino, 335 N.J.Super. 319, 762 A.2d 305 (App.Div. 2000) (holding that threshold consideration for assessment of fees and costs under offer-of-judgment rule is the amount of damages awarded by court or jury, not the amount of judgment entered as a result of the verdict on damages.)
[4] R. 4:58-2 provides in pertinent part:

If the offer of a claimant is not accepted and the claimant obtains a verdict or determination at least as favorable as the rejected offer, the claimant shall be allowed, in addition to costs of suit, (a) all reasonable litigation expenses incurred following non-acceptance; (b) eight per cent interest on the amount of any money recovery from the date of the offer or the date of completion of discovery, whichever is later; and (c) a reasonable attorney's fee, which shall belong to the client, for such subsequent services as are compelled by the non-acceptance. In an action for unliquidated damages, however, no allowances under this rule shall be granted to the offeror unless the amount of the recovery is in excess of 120% of the offer.