766 A.2d 1141

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. CHARLES RUMBLIN, A/K/A DAWUD M. MCGHEE
AND JAMAL JONES, DEFENDANT–APPELLANT.

Argued October 11, 2000—Decided February 28, 2001.

*Alison S. Perrone*, Assistant Deputy Public Defender, argued the cause for appellant, (*Ivelisse Torres*, Public Defender, attorney; *Ms. Perrone* and *Claire Drugach*, on the letter briefs).

*John J. Scaliti*, Assistant Prosecutor, argued the cause for respondent, (*William H. Schmidt*, Bergen County Prosecutor, attorney).

*Steven A. Yomtov*, Deputy Attorney General, argued the cause for amicus curiae, Attorney General of New Jersey, (*John J. Farmer, Jr.*, Attorney General, attorney).

The opinion of the Court was delivered by

COLEMAN, J.

This appeal requires us to decide whether the No Early Release Act (NERA), *N.J.S.A.* 2C:43–7.2, may be applied to a defendant convicted of a first or second degree offense as an accomplice rather than as a principal. In a published opinion, the Appellate Division held that NERA may be applied to accomplices. *State v. Rumblin,* 326 *N.J.Super.* 296, 302, 741 *A.*2d 138 (1999). We granted defendant's petition for certification, 163 *N.J.* 396, 749 *A.*2d 370 (2000), and now affirm.

## I.

A Bergen County Grand Jury indicted defendant and his co-defendants, Everton Watts and Raheam Goosby, for first-degree robbery, *N.J.S.A.* 2C:15–1 (Count One); second-degree aggravated assault, *N.J.S.A.* 2C:12–1b(1) (Count Two); third-degree aggravated assault, *N.J.S.A.* 2C:12–1b(2) (Count Three); fourth-degree aggravated assault, *N.J.S.A.* 2C:12–1b(4) (Counts Four, Five, Six, Eight, Nine, Ten, and Eleven); third-degree aggravated assault upon a police officer, *N.J.S.A.* 2C:12–1b(5)(a) (Count Seven); fourth-degree resisting arrest, *N.J.S.A.* 2C:29–2a (Counts Twelve, Thirteen, and Fourteen); second-degree possession of a weapon for unlawful purpose, *N.J.S.A.* 2C:39–4a (Count Fifteen); third-degree unlawful possession of a weapon, *N.J.S.A.* 2C:39–5b (Count Sixteen); fourth-degree unlawful possession of hollow-nose bullets, *N.J.S.A.* 2C:39–3f (Count Seventeen); third-degree possession of cocaine, *N.J.S.A.* 2C:35–10a(1) (Count Eighteen); fourth-degree unlawful taking of means of conveyance, *N.J.S.A.* 2C:20–10d (Count Twenty); and fourth-degree receiving stolen property, *N.J.S.A.* 2C:20–7 (Count Twenty One). In addition, the indictment charged only defendant Rumblin with third-degree receiving stolen property, *N.J.S.A.* 2C:20–7 (Count Nineteen).

Defendant negotiated a plea agreement with the State in which he would plead guilty to first-degree robbery, third-degree aggravated assault upon a police officer, two counts of fourth-degree resisting arrest, third-degree possession of cocaine, and third-degree theft by receiving a stolen 1985 Chevrolet Camaro motor vehicle. Defendant was informed that his guilty plea to first-degree robbery would invoke the sentencing provisions of NERA. For its part of the plea agreement, the State would recommend a maximum custodial base term of twenty years and would dismiss the remaining counts of the indictment.

Defendant provided a factual basis to support his guilt on each of the six counts to which he entered guilty pleas. Defendant admitted that his role was to assist in planning a robbery of the Radisson Inn hotel located in Paramus, New Jersey, and to

provide transportation by driving the stolen Chevrolet Camaro to and from the scene on October 20, 1997. Defendant helped to plan the robbery, knowing that the two co-defendants would be armed with guns when they entered the hotel to commit the robbery. As planned, defendant drove Watts and Goosby to the Radisson Inn and waited outside in the stolen Camaro while they entered the hotel lobby and robbed Thomas Patterson, the hotel clerk. Defendant knew that Watts and Goosby were armed when they entered the hotel. After they robbed Patterson at gunpoint, they injured him by pistol-whipping him. When police officers arrived on the scene, Watts and Goosby pointed their weapons at the officers before they were arrested. At the time of their arrests, a police officer recovered one of the weapons used in the robbery. That gun contained three hollow-nose bullets. Defendant was arrested while attempting to flee in the stolen Camaro. He later admitted that he was an accomplice to the robbery and that he shared the intent and purpose of his co-defendants to commit the robbery while armed with guns.

Based on those facts, the court sentenced defendant for the first-degree robbery to a base term of thirteen years and required him to serve eighty-five percent, or eleven years and eighteen days, before becoming eligible for parole. Concurrent terms were imposed on the remaining five counts. The Appellate Division affirmed the judgment of conviction in all respects.

## II.

Defendant argues that NERA does not apply to unarmed accomplices because NERA limits its scope to the "actor" who causes death or serious bodily injury or uses or threatens the use of a deadly weapon. *See N.J.S.A.* 2C:43–7.2d. The essence of defendant's assertion is that NERA applies only to principals and not accomplices. The State disagrees and maintains that because of the nature of accomplice liability under New Jersey law, NERA applies to both principals and accomplices alike.

Our analysis must begin with the statute itself. NERA, in pertinent part, provides:

a. *A court imposing a sentence of incarceration for a crime of the first or second degree shall fix a minimum term of 85% of the sentence during which the defendant shall not be eligible for parole if the crime is a violent crime as defined in subsection d. of this section.*

. . . .

d. *For the purposes of this section, "violent crime" means any crime in which the actor causes death, causes serious bodily injury as defined in subsection b. of N.J.S. 2C:11–1, or uses or threatens the immediate use of a deadly weapon.* "Violent crime" also includes any aggravated sexual assault or sexual assault in which the actor uses, or threatens the immediate use of, physical force.

For the purposes of this section, "deadly weapon" means any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury.

[*N.J.S.A.* 2C:43–7.2 (emphasis added).]

Accomplice liability is based on *N.J.S.A.* 2C:2–6. That statute, in pertinent part, provides:

a. A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.

b. A person is legally accountable for the conduct of another person when:

(1) Acting with the kind of culpability that is sufficient for the commission of the offense, he causes an innocent or irresponsible person to engage in such conduct;

(2) He is made accountable for the conduct of such other person by the code or by the law defining the offense;

(3) *He is an accomplice of such other person in the commission of an offense;* or

(4) He is engaged in a conspiracy with such other person.

c. *A person is an accomplice of another person in the commission of an offense if:*

(1) *With the purpose of promoting or facilitating the commission of the offense; he*

(a) *Solicits such other person to commit it;*

(b) *Aids or agrees or attempts to aid such other person in planning or committing it; or*

(c) Having a legal duty to prevent the commission of the offense, fails to make proper effort so to do; or

(2) His conduct is expressly declared by law to establish his complicity.

[*Ibid.* (emphasis added).]

Under *N.J.S.A.* 2C:2–6, accomplice liability attaches when a defendant shares the purpose of the principal who commits the offense charged, *State v. Norman*, 151 *N.J.* 5, 32, 697 *A.*2d 511 (1997), and the defendant "actually foresee[s] and intend[s] the result of his or her acts." *State v. Bridges*, 133 *N.J.* 447, 456, 628 *A.*2d 270 (1993). Here, to be guilty of robbery in the first degree, *N.J.S.A.* 2C:15–1b requires that principals Watts and Goosby purposely attempted to inflict serious bodily harm, or were armed with, or used, or threatened to use a deadly weapon while committing the theft. For defendant to be guilty of first-degree robbery as an accomplice, he, too, must have intended that the principals engage in the armed robbery and defendant must have acted purposely in planning, promoting, or facilitating that robbery. *See State v. Weeks*, 107 *N.J.* 396, 403, 526 *A.*2d 1077 (1987). That defendant acted in such a manner is beyond dispute given the factual basis for his guilty pleas.

We reject defendant's contention that because NERA uses the word "actor," NERA does not apply to accomplices. The New Jersey Code of Criminal Justice, *N.J.S.A.* 2C:1–1 to 104–9, uses the word "actor" in at least eighty-seven subsections and in at least seventy additional subparts.[1] In examining the statutory

---

[1] The word "actor" appears in the Code at the following locations: 2C:1–3a(6), –3c; 2C:1–14e,g,j; 2C:2–1a; 2C:2–2b(3), (4); 2C:2–3b,c,e; 2C:2–4c(1),c(2),c(3); 2C:2–8a,b,d,e(2),e(3); 2C:4c(1),(2),(3); 2C:2–8a,b,d,e(2),e(3); 2C:2–9a,b; 2C:2–10c(2); 2C:3–3c(1),c(2); 2C:3–4a,b(1)(a),b(1)(b)(I)–(iii),b(2), b(2)(a),b(2)(b),b(2)(b)(I),c(1),c(2),c(2)(a),c(2)(b),c(3); 2C:3–5a(1),a(2),a(3),b(1),b(2),b(3); 2C:3–6a,b(1),b(2),b(3), (3)(c),b(3)(c)(I),b(3)(c)(ii); 2C:3–7a,b(1)(a),b(2)(a)–(d),c,e,e(2); 2C:3–8; 2C:3–9a (1),c; 2C:3–11b,c; 2C:5–1b,d; 2C:5–2e; 2C:11–2.1; 2C:11–3a(1)–(3); 2C:11–4a,b(3); 2C:12–1b(4); 2C:12–2b(2); 2C:13–1c,c(2),c(2)(c),e(1)–(2); 2C:13–2b; 2C:13–3; 2C:13–4c(1)–(2); 2C:13–5,a(5),a(7),b; 2C:13–6; 2C:14–1a,c,d; 2C:14–2(nearly every subsection); 2C:14–3a,b; 2C:14–4b(1)–(2),c; 2C:14–5b; 2C:14–6; 2C:15–1b; 2C:17–1f; 2C:17–3b(1)–(6); 2C:18–2a(1),b; 2C:18–3b(1),d(2)–(3); 2C:18–4; 2C:18–6a; 2C:20–1h; 2C:20–2c,d; 2C:20–5e,g; 2C:20–7.1d; 2C:20–9; 2C:20–10a; 2C:20–17b; 2C:20–18; 2C:21–1a; 2C:21–4.3h; 2C:21–8.1a; 2C:21–13c; 2C:21–15; 2C:21–17d; 2C:24–1a(1),(2),(4); 2C:24–4b(5); 2C:24–9d; 2C:27–2d; 2C:27–3a(3); 2C:28–1c,d; 2C:28–5a(4); 2C:28–7b; 2C:29–1b; 2C:29–3a(7),b(4); 2C:29–4; 2C:29–5e; 2C:29–6b; 2C:29–7; 2C:33–2a(2); 2C:33–2.1d; 2C:33–14.1;

definition of the word "actor," *N.J.S.A.* 2C:1–14e, g, j, and *N.J.S.A.* 2C:14–1a, as well as viewing the term in its proper syntax, it becomes clear that "actor" is intended as a synonym for a defendant regardless of whether he or she acts as a principal or an accomplice. Here, defendant was an "actor" when he helped to plan the robbery and when he drove the principals to the scene of the robbery. Furthermore, there is no evidence in any of NERA's legislative history that the Legislature intended the word "actor" to apply solely to principals. NERA intends to impose greater punishment upon violent criminals. *N.J.S.A.* 2C:43–7.2d. The Act does not differentiate among perpetrators of violent crimes based upon principal and accomplice classifications.

■ In construing NERA, the Appellate Division reasoned that "the Legislature would not have intended that the mastermind of an armed robbery could avoid the consequences of [NERA] sentencing by having a confederate carry out the crime." *Rumblin, supra,* 326 *N.J.Super.* at 302, 741 *A.*2d 138. We agree that the word "actor" refers to a defendant-perpetrator of an offense and includes both principals and accomplices. We hold, therefore, that although an accomplice may be found guilty of a lower degree of a violent offense than a principal if the two did not share the same mental culpability, *Weeks, supra,* 107 *N.J.* at 400–03, 526 *A.*2d 1077; *State v. Bielkiewicz,* 267 *N.J.Super.* 520, 533–34, 632 *A.*2d 277 (App.Div.1993), for NERA purposes principals and accomplices are treated the same. *State v. Mancine,* 124 *N.J.* 232, 259–60, 590 *A.*2d 1107 (1991).

What we said in holding that the Graves Act, *N.J.S.A.* 2C:43–6c, applies to unarmed accomplices, is applicable here. In *State v. White,* 98 *N.J.* 122, 126–27, 484 *A.*2d 691 (1984), the unarmed defendant who acted as an accomplice in two armed robberies was

---

2C:33–28a,b,c,d; 2C:34–1a(4)(g), b(1)-(7); 2C:34–1.1d; 2C:34–3d; 2C:35–1.1c; 2C:35–3; 2C:35–6; 2C:35–7; 2C:35–7.1b; 2C:35A–3d; 2C:35A–4a(3); 2C:37–1b; 2C:39–16; 2C:43–6f; 2C:43–7.2d; 2C:44–1a(1); and, 2C:44–3g.

sentenced pursuant to the Graves Act. In holding that the Graves Act applied to unarmed accomplices, we observed:

> An accomplice may be guilty of armed robbery even though he did not personally possess or use the firearm in the course of the commission of the robbery. The accomplice has committed the same crime as the individual who possessed or used the gun if the accomplice had the purpose to promote or facilitate that crime, namely, robbery with the use of a firearm. *See N.J.S.A.* 2C:15–1b; *N.J.S.A.* 2C:2–6b; *State v. Gantt,* 195 *N.J.Super.* 114, 118, 478 A.2d 422 (App.Div.1984), certif. granted, [101] *N.J.* [220, 501 A.2d 901] (1985). One is the alter ego of the other.
>
> Surely, the Legislature intended that when an accomplice is guilty of a robbery that is held to be a crime of the first degree because one perpetrator used or possessed a firearm, the Graves Act would apply in sentencing the accomplice. If the Legislature had a contrary intent, it could have said so. *Cf. N.J.S.A.* 2C:11–3a(3) (defendant who had no reasonable ground to believe that any other participant was armed is not responsible for felony-murder committed by another). The Legislature created no exception from the Graves Act. Where an accomplice has been found guilty of armed robbery, he is subject to the minimum imprisonment terms of the Graves Act.
>
> [*Id.* at 130, 484 A.2d 691 (footnote omitted).]

Similarly, we hold that NERA applies to unarmed accomplices.

## III.

 Defendant also argues that NERA violates state and federal constitutional prohibitions against cruel and unusual punishment. In *State v. Johnson,* 166 *N.J.* 523, 766 A.2d 1126 (2000), also decided today, this Court concludes that NERA is not unconstitutional.

## IV.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, LaVECCHIA and ZAZZALI—6.

*Opposed*—None.