NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4417-14T1

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

GARY TWIGGS,

    Defendant-Respondent.

_____

APPROVED FOR PUBLICATION

March 22, 2016

APPELLATE DIVISION

Submitted February 9, 2016 — Decided March 22, 2016

Before Judges Reisner, Leone and Whipple.

On appeal from Superior Court of New Jersey, Law Division, Cape May County, Indictment No. 14-12-01014.

John J. Hoffman, Acting Attorney General, attorney for appellant (Joseph A. Glyn, Deputy Attorney General, of counsel and on the brief).

Cooper Levenson, P.A., attorneys for respondent (Steven E. Rosenfeld, on the brief).

The opinion of the court was delivered by

WHIPPLE, J.A.D.

The State appeals from an April 27, 2015 order dismissing an indictment charging defendant with conspiracy to commit robbery.  The trial court dismissed the indictment because the

State initiated its prosecution beyond the time permitted by the criminal statute of limitations, N.J.S.A. 2C:1-6. Contrary to the State's argument, we hold that the statutory tolling provision in N.J.S.A. 2C:1-6, for situations in which "the actor" is identified by means of DNA evidence, refers to the individual whose DNA is analyzed. It does not apply to a third party identified by that individual. Consequently, we affirm.

## I.

We discern the following facts from the record. On June 16, 2009, defendant met S.T.[1] in a Wildwood Crest parking lot to purchase 150 tablets of prescription painkillers. As defendant and S.T. talked in the parking lot, a man wearing a mask approached, pointed a handgun at S.T. and defendant, and ordered them into defendant's vehicle. After defendant and S.T. entered the vehicle, the masked man demanded their money, cell phones, and the drugs that S.T. was about to sell to defendant. After the man left with the money, cell phones, and drugs, S.T. attempted to chase him on foot but was unable to apprehend the masked gunman.

S.T. reported the robbery of his money and cell phone to the Wildwood Crest Police Department (the Department), which

---

[1] In the context of this case, S.T. was a crime victim, and his identity is irrelevant to our decision.

initiated an investigation.  Several officers went to the scene of the crime and found a mask and gloves, which S.T. identified as belonging to the gunman.  The officers submitted the gloves and mask to the New Jersey State Police DNA Laboratory (the DNA Lab), which extracted and analyzed DNA samples from hair found on the articles found at the scene. No DNA matches were available in the DNA Lab's database at that time, however.  The DNA Lab entered the DNA profile into the Combined DNA Information System (CODIS).

Meanwhile, S.T. and defendant submitted to multiple interviews at the Department.  During these interviews, S.T. admitted to police that he and defendant had met for the purpose of conducting a drug sale.  Defendant denied S.T.'s account of the incident, leading police to suspect that he was involved in the robbery.  S.T. also told police that he personally believed defendant was involved in planning the robbery.  After sending the mask and gloves to the DNA lab for inspection in July 2010, the Department did not receive any further evidence until 2014.

On July 2, 2014, the Department received information from the DNA Lab that it had matched DNA from the crime-scene with DNA taken from Dillon Tracy after he was arrested for a different offense in 2014.  Tracy's DNA profile matched the profile of the hair on the mask found in 2009, which the DNA Lab

had entered into CODIS. Upon receiving this information, the Department obtained a warrant to take a DNA sample from Tracy. Defendant's DNA was not found or matched with a CODIS sample at any point during this investigation.

When officers met with Tracy on July 19, 2014, he initially refused to discuss the 2009 robbery. However, on September 16, 2014, Tracy told police that he was the masked gunman who robbed defendant and S.T. Tracy also told police that defendant arranged the robbery so they could both share in the drugs that Tracy planned to steal. Tracy told police he stole defendant's money and cell phone to make defendant appear to be a victim, and that he threw his gun away after the robbery was completed. Defendant was arrested on September 17, 2014 and charged with conspiracy.

On December 2, 2014, the grand jury indicted defendant and Tracy. The indictment charged both defendant and Tracy with second-degree conspiracy under N.J.S.A. 2C:5-2a to commit first-degree robbery in violation of N.J.S.A. 2C:15-1a. The indictment also charged Tracy with first-degree robbery, N.J.S.A. 2C:15-1a; unlawful possession of a handgun, N.J.S.A. 2C:39-5b; and possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4a. Tracy subsequently pled guilty to each of these charges. On January 22, 2015, defendant filed a motion to

dismiss the indictment on the basis that the State's claim was barred by the general criminal statute of limitations. The trial court heard argument on the motion on April 14, 2015 and granted defendant's motion to dismiss because the State initiated its prosecution outside of the time permitted by the statute of limitations. The trial judge found that the prosecution was initiated more than five years after the June 16, 2009 incident because the grand jury proceeding did not start until December 2, 2014. The State appealed.

The State raises a single issue on appeal:

> THE TRIAL COURT'S RULING THAT THE STATUTE OF LIMITATIONS WAS NOT TOLLED WAS INCORRECT AND THIS COURT SHOULD REINSTATE DEFENDANT'S INDICTMENT.

## II.

We review the trial court's dismissal of the indictment de novo. A trial court's "interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." State v. Pomianek, 221 N.J. 66, 80 (2015) (quoting Manalapan Realty v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995)).

The sole issue on appeal is the trial court's interpretation of N.J.S.A. 2C:1-6(c), the criminal statute of limitations. When interpreting statutes, our "overriding goal is to give effect to the Legislature's intent." State v. D.A.,

191 N.J. 158, 164 (2007) (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)).  The best indicator of that intent is "the plain [statutory] language chosen by the Legislature."  State v. Perry, 439 N.J. Super. 514, 523 (App. Div.), certif. denied, 222 N.J. 306 (2015) (citing State v. Gandhi, 201 N.J. 161, 176 (2010)).  We thus read the text of a statute in accordance with its ordinary meaning unless otherwise specified.  Ibid.; see also N.J.S.A. 1:1-1 (explaining that "words and phrases [in statutes] shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language.").

In cases where a plain reading of the statute "leads to a clear and unambiguous result, then the interpretive process should end, without resort to extrinsic sources."  D.A., supra, 191 N.J. at 164 (citation omitted).  If, however, the plain language of the statute is ambiguous, we may turn to extrinsic evidence to determine the Legislature's intent in enacting the statute.  Ibid.  Turning to such extrinsic evidence is also necessary if a plain reading of a statute renders an absurd result at odds with the Legislature's intent.  Ibid. (citing DiProspero, supra, 183 N.J. at 492); State v. Williams, 218 N.J.

576, 586 (2014) (citation omitted). Such extrinsic evidence includes "legislative history, committee reports, and contemporaneous construction." DiProspero, supra, 183 N.J. at 492-93 (quoting Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75 (2004)). Such evidence aids us in elucidating the Legislature's intent. We may not "rewrite a statute or add language that the Legislature omitted." State v. Munafo, 222 N.J. 480, 488 (2015) (citations omitted).

Finally, in criminal cases where the statutory language is ambiguous and extrinsic evidence is unhelpful in determining the Legislature's intent in enacting the statute, we apply the rule of lenity. We note that all penal statutes are to be strictly construed. D.A., supra, 191 N.J. at 164 (citing State v. Valentin, 105 N.J. 14, 17 (1987)). In so doing, where ambiguity in statutory language persists after reference to the statute's language and extrinsic evidence, we resolve the ambiguity "in favor of anyone subjected to [that] criminal statute." Ibid. (citations omitted).

### III.

N.J.S.A. 2C:1-6 provides the time limitations within which a prosecution for a crime must be commenced. The crime at issue here is conspiracy to commit robbery. Because the statute of limitations does not provide a separate limitations period for

conspiracy crimes, the general limitations period applies. The State must thus commence a prosecution against a criminal defendant within five years of the date that each element of the crime has been completed. N.J.S.A. 2C:1-6(b)(1),(c). N.J.S.A. 2C:1-6(c), however, provides an exception to the categorical bar against prosecution of such crimes after the passage of five years. Specifically, the statute provides that

> [t]ime starts to run on the day after the offense is committed, except that when the prosecution is supported by physical evidence that identifies the actor by means of DNA testing or fingerprint analysis, time does not start to run until the State is in possession of both the physical evidence and the DNA or fingerprint evidence necessary to establish the identification of the actor by means of comparison to the physical evidence.

The State asserts that this exception applies here, because defendant's prosecution was the result of obtaining DNA evidence. The State argues that the exception tolled the commencement of the statute of limitations period. The State argues that the exception overrides the five-year limitations period. We disagree.

### A.

We first read the plain language of N.J.S.A. 2C:1-6(c) to derive the Legislature's intent in enacting the statute. Perry, supra, 439 N.J. Super. at 523. The language of N.J.S.A. 2C:1-

6(c) supports defendant's reading of the statutory exception: that it only applies to persons whose DNA directly identifies them as criminal actors, and does not apply to those who are later named by those same criminal actors. First, the statutory language at issue specifically refers to the identification of "the actor." The term "actor" in this case refers only to an individual who committed a criminal offense, and who is "identifie[d] . . . by means of DNA testing or fingerprint analysis." N.J.S.A. 2C:1-6(c). The natural and plain reading of this language is that the exception only applies to those criminal offenders who are directly identified by such evidence. See State v. Gelman, 195 N.J. 475, 482 (2008) (explaining that we give statutes "their ordinary and commonsense meaning.") (citing DiProspero, supra, 183 N.J. at 492).

This reading is supported by other language in the statute. N.J.S.A. 2C:1-6(c) provides that the statute's time limitations do not begin to run "until the State is in possession of both the physical evidence and the DNA or fingerprint evidence necessary to establish the identification of the actor by means of comparison to the physical evidence." This language demonstrates that the Legislature intended for the exception to apply when DNA evidence could be compared against physical evidence to establish the identity of a criminal offender. In

this case, there is no such physical evidence or DNA evidence establishing defendant's identity as a criminal offender; the only evidence that the State derived from the DNA evidence was Tracy's identity, and, subsequently, his confession that he and defendant conspired to commit robbery. There is no physical evidence implicating defendant against which to compare DNA evidence, and accordingly, the statute forecloses tolling the statute of limitations for a prosecution against defendant.

We note here that, had there been no DNA evidence in this case, no exception to the statutory limitations period would apply. We cannot discern any legislative intent to relax the limitations period merely because a person identified by DNA evidence implicates a third party in a confession, when that third party's involvement is not itself supported by direct DNA evidence. To hold otherwise would be to override the entire limitations period for any party accused of a crime when any single defendant names another party in a confession. We thus reject the State's argument.

### B.

Although the plain language of the statute supports defendant's interpretation of the statute, we also examine the extrinsic evidence in light of the State's argument that the plain language of the statute is ambiguous. When examining

extrinsic evidence, we may look to several sources to clarify the Legislature's intent in enacting a statute, "including legislative history, committee reports, and contemporaneous construction." DiProspero, supra, 183 N.J. at 492-93 (quoting Faugno, supra, 182 N.J. at 75).

N.J.S.A. 2C:1-6 was first enacted in 1978. The exception to the statute of limitations pertinent to this appeal was first introduced in 2000; the exception was enacted by the Assembly and Senate in 2002. A. 2658, 209th Leg. (N.J. 2002); S. 1516, 209th Leg. 2d Sess. (N.J. 2002). Both versions contained the same language now reflected in N.J.S.A. 2C:1-6(c), which amended the statute to read as follows:

> [E]xcept that when the prosecution is supported by physical evidence that identifies the actor by means of DNA testing or fingerprint analysis, time does not start to run until the State is in possession of both the physical evidence and the DNA or fingerprint evidence necessary to establish the identification of the actor by means of comparison to the physical evidence.
>
> [Ibid.]

This language, ultimately included in the statute, replaced other language introduced earlier in the amendment's life cycle. The earlier proposed language read as follows:

> Notwithstanding the provisions of N.J.S. 2C:1-6 or any other law to the contrary, if the identity of the person who commits a crime is unknown when the crime is committed

> and physical evidence is collected which can be tested for its DNA characteristics and used to identify the person who committed the crime, a prosecution for the crime may be commenced at any time.

> [S. 1516, 209th Leg., 1st Sess. (2000).]

The most specific indication of the Legislature's intent in this case is the statement accompanying the amendment that the Legislature passed. The statement accompanying the earlier language provided that "[t]his bill would remove time limitations on the prosecution of crimes when the person who committed the crime is unknown at the time, but DNA evidence collected at the crime scene can be used to identify the person at a later date." Sponsors' Statement to S. 1516 (Sept. 14, 2000). The substitute version of the amendment, which was ultimately adopted, was accompanied by a new sponsors' statement which provided that the substituted amendment would "toll the applicable statute of limitations for the commission of a crime in certain cases until the State is in possession of DNA or fingerprint evidence taken from the suspect." Sponsors' Statement to S. 1516 (Jan. 3, 2002). No other amendment to the DNA evidence exception to the statute of limitations has since been proposed or enacted.

In using extrinsic evidence to interpret statutory language, our Supreme Court has cautioned that, although

helpful, such evidence has limitations.  DiProspero, supra, 183 N.J. at 499 (citing Deaney v. Linen Thread Co., 19 N.J. 578, 584-85 (1955)).  Such evidence represents the will of only a few lawmakers, and may also be "contradictory, ambiguous, or otherwise without substantial probative value in determining legislative meaning."  Ibid.  (quoting Deaney, supra, 19 N.J. at 584-85).  Accordingly, the court must exercise "considered judgment" when considering such evidence.  Ibid.

In this case, we conclude that the legislative history of N.J.S.A. 2C:1-6(c) supports the defendant's interpretation of the statute.  Although there are competing versions of the legislative history, we focus on the 2001 sponsors' substituted statement, which accompanied the amendment adopted by both of our State's legislative bodies.  The legislative intent in passing the bill, according to the substituted statement, was to "toll the applicable statute of limitations for the commission of a crime in certain cases until the State is in possession of DNA or fingerprint evidence taken from the suspect."  Sponsors' Statement to S. 1516 (Jan. 3, 2002) (emphasis added).  This language clearly demonstrates that the Legislature intended for the exception to apply when DNA evidence directly identifies a suspect, and not when DNA implicates another suspect, who in turn implicates a defendant.  In this case, there was no

evidence "taken" from defendant; the DNA evidence and physical evidence in this case only identified Tracy as a criminal actor. The legislative intent in this case mirrors the meaning we gleaned from the plain text: the DNA evidence exception only applies when the DNA evidence can be compared against physical evidence that directly identifies a defendant as a criminal actor.

Although the language of the original sponsor's statement and the substituted statement changed before the ultimate enactment of the DNA exception, the substituted language does not defeat this reading. The original sponsors' statement was more specifically focused on the criminal defendant in a particular criminal case than the current language, noting that "[t]his bill would remove time limitations on the prosecution of crimes when <u>the person who committed the crime</u> is unknown at the time, but DNA evidence collected at the crime scene can be used to identify <u>the person</u> at a later date." <u>Sponsors' Statement to S. 1516</u> (Sept. 14, 2000) (emphasis added). The language in the current statement, however, does not shift the focus of the statute away from the suspect; rather, the substituted language specifically notes the time at which the exception to the statute of limitations is triggered. <u>See</u> <u>Sponsors' Statement to S. 1516</u> (Jan. 3, 2002) (noting that the exception only triggers

when the State is "in possession of DNA or fingerprint evidence taken from the suspect."). We accordingly conclude that the legislative history supports the trial judge's reading of N.J.S.A. 2C:1-6(c).[2]

The State relies on State v. Rumblin, 166 N.J. 550 (2001), arguing that Rumblin's construction of the term "actor" in another section of the Criminal Code would provide a broad scope under which the DNA exception to the statute of limitations would operate.

We reject the State's argument. In Rumblin, our Supreme Court explained how provisions of N.J.S.A. 2C:43-7.2 (the No Early Release Act (NERA)) interacted with accomplice liability provisions in our criminal code. Rumblin, supra, 166 N.J. at 551. The Court explained that the term "actor" was synonymous with the term "defendant" for purposes of NERA, which includes those who did not directly perpetrate criminal activity. Id. at

---

[2] We note an additional practical consideration which supports the logic of this statutory construction. The reliability of DNA evidence justifies tolling the statute of limitations for an actor whose DNA is later implicated as evidence of a crime. See State v. Harvey, 151 N.J. 117, 158-59 (1997) (explaining that DNA is generally reliable evidence that remains durable over an extended period of time). This rationale, however, does not apply with respect to a third party whom that criminal actor implicates by confession; a co-defendant's incriminating statements about a third party are not rendered significantly more reliable by DNA evidence of the co-defendant's guilt.

556. The State's reliance on Rumblin, however, is misplaced because of the different contexts of the word "actor" in each statute.[3] In NERA, the word "actor" is placed next to words in which accomplices could easily be understood to be actors; for example, NERA would apply to actors who "cause" death, or an actor who engages in criminal enterprise with others. N.J.S.A. 2C:43-7.2. As the Court noted in Rumblin, such a definition is plausible when "viewing the term in its proper syntax[.]" 166 N.J. at 556.

The syntactical usage of the term "actor" is not the same in the contexts of NERA and N.J.S.A. 2C:1-6(c). NERA subjected convicted criminal defendants to an eighty-five percent parole disqualifier if a criminal "actor" caused death, serious bodily injury, used or threatened the use of a deadly weapon, or committed aggravated sexual assault. Rumblin, supra, 166 N.J. at 553. The Rumblin Court's focus on the word "actor" led it to conclude that the terms "actor" and "defendant" were synonymous for NERA purposes only. Id. at 555-56. The focus of the

---

[3] NERA has been amended since our Supreme Court announced its decision in State v. Rumblin, and the text no longer contains the term "actor." In amending the statute, the Legislature noted in its Statement that the purpose of the amendment was to "specifically enumerate those violent first and second degree crimes" to which NERA must be applied. Assembly Law and Public Safety Committee's Statement to A.B. No. 3201 (2001). Accordingly, we refer to the 2000 version of NERA when considering the context of the word "actor" for NERA purposes.

Court's inquiry was whether an "actor" could only be a principal in a crime, or if an accomplice to a crime could also be an "actor" for NERA purposes. Ibid. Such construction is sound given the syntactical use of the word "actor" in NERA; the term "actor" generally refers to all those involved in criminal activity in the NERA context.

N.J.S.A. 2C:1-6(c) uses the term "actor" in a different context, both syntactically and lexicologically. In the context of the statute of limitations, the term "actor" is used directly in conjunction with phrases discussing the identification of that actor "by means of DNA testing or fingerprint analysis," or "by means of comparison to the physical evidence." The use of the phrase "actor" in this instance is more specific than the use of the term in NERA and Rumblin, supra. Rather than referring generally to those who perpetrate violent crime, an "actor" in this instance is a person who is directly identified by DNA evidence and physical evidence. Despite the construction in Rumblin, the two uses of the term "actor" are different enough to merit two different analyses because of the separate contexts in which the statutes operate. Accordingly, we reject the State's argument in this regard.

Finally, although we need not reach the issue of the rule of lenity, we comment briefly on its application. The Supreme Court has provided that all penal statutes are to be strictly construed. D.A., supra, 191 N.J. at 164 (citing Valentin, supra, 105 N.J. at 17). We apply standard canons of statutory interpretation when construing such statutes, and we resolve any ambiguity in a criminal statute "in favor of anyone subjected to [that] criminal statute." Ibid. (citations omitted). The rule of lenity only applies when the statutory text itself is ambiguous, and the use of extrinsic aids has not provided guidance. Ibid. Accordingly, it only applies when other canons of statutory interpretation fail to yield a clear result.

The rule of lenity would foreclose us from adopting the State's reading of N.J.S.A. 2C:1-6(c) if any ambiguity remained after analyzing the plain statutory text and available extrinsic evidence. The trial court's reading of the statute is the narrowest reading available because it strictly limits the use of DNA evidence to persons who the DNA evidence directly identifies; such a reading does not permit the State to initiate prosecutions against those who are not directly implicated in criminal activity by DNA evidence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18

**LEONE, J.A.D., dissenting.**

This case involves the interpretation of <u>N.J.S.A.</u> 2C:1-6(c), in particular its use of the term "the actor."  I dissent because I cannot square the majority opinion's reasoning with the Supreme Court's interpretation of the term "the actor" in <u>State v. Rumblin</u>, 166 <u>N.J.</u> 550 (2001).

The Court in <u>Rumblin</u> had before it the original No Early Release Act.  <u>N.J.S.A.</u> 2C:43-7.2 (1997) (hereinafter NERA).  NERA required courts to impose a minimum parole ineligibility term of 85% of the sentence "if the crime is a violent crime as defined in subsection d. of this section."  <u>N.J.S.A.</u> 2C:43-7.2(a) (1997).  NERA defined a "violent crime" as "any crime in which <u>the actor</u> causes death, causes serious bodily injury as defined in subsection b. of <u>N.J.S.</u> 2C:11-1, or uses or threatens the immediate use of a deadly weapon."  <u>N.J.S.A.</u> 2C:43-7.2(d) (1997) (emphasis added).

Like defendant here, the defendant in <u>Rumblin</u> helped to plan an armed robbery that was carried out by somebody else. <u>Rumblin</u>, <u>supra</u>, 166 <u>N.J.</u> at 552-53.  The co-defendants carried, threatened the use of, and used guns to pistol-whip and injure the victim.  <u>Id.</u> at 553.  The defendant argued that "NERA does not apply to unarmed accomplices because NERA limits its scope

to the 'actor' who causes death or serious bodily injury or uses or threatens the use of a deadly weapon."  Id. at 553 (quoting N.J.S.A. 2C:43-7.2(d) (1997)).

Our Supreme Court in Rumblin "h[e]ld that NERA applies to unarmed accomplices."  Id. at 557.  The Court "reject[ed] defendant's contention that because NERA uses the word 'actor,' NERA does not apply to accomplices" under N.J.S.A. 2C:2-6(b). Id. at 555.  The Court pointed out that "[t]he New Jersey Code of Criminal Justice, N.J.S.A. 2C:1-1 to 104-9, uses the word 'actor' in at least eighty-seven subsections and in at least seventy additional subparts."  Id. at 555 & n.1.  The Court explained that "[i]n examining the statutory definition of the word 'actor,' as well as viewing the term in its proper syntax, it becomes clear that 'actor' is intended as a synonym for a defendant regardless of whether he or she acts as a principal or an accomplice."  Id. at 555-56 (emphasis added) (citing N.J.S.A. 2C:1-14(e), (g), and (j), and N.J.S.A. 2C:14-1(a)).  The Court concluded "that the word 'actor' refers to a defendant-perpetrator of an offense and includes both principals and accomplices."  Id. at 556 (emphasis added).

Thus, our Supreme Court in Rumblin held that "the actor" was synonymous with "a defendant."  Id. at 555-56. Applying the

Court's definition of "the actor" to N.J.S.A. 2C:1-6(c), that section would read:

> when the prosecution is supported by physical evidence that identifies [a defendant] by means of DNA testing or fingerprint analysis, time does not start to run until the State is in possession of both the physical evidence and the DNA or fingerprint evidence necessary to establish the identification of [a defendant] by means of comparison to the physical evidence.

Under that reading, N.J.S.A. 2C:1-6(c) would permit the prosecution here. The December 2, 2014 indictment charged both defendant and Tracy with second-degree conspiracy under N.J.S.A. 2C:5-2(a) to commit first-degree robbery in violation of N.J.S.A. 2C:15-1(a). Because the prosecution of defendant is supported by physical evidence (the mask bearing DNA) that identifies a defendant (Tracy) by means of DNA testing, the time for prosecution would not start to run until the State was in possession of both the physical evidence and the DNA evidence necessary to establish the identification of a defendant (Tracy) by comparison to the physical evidence.

Using the Supreme Court's definition of "the actor" here is also supported by the other statutory sources cited by the Court to justify its holding. Rumblin, supra, 166 N.J. at 555-56. First, N.J.S.A. 2C:2-6 provides that "[a] person is legally accountable for the conduct of another person" whether "[h]e is

an accomplice of such other person" or "[h]e is engaged in a conspiracy with such other person." N.J.S.A. 2C:2-6(b)(3), (4). As "the word 'actor' . . . includes both principals and accomplices," Rumblin, supra, 166 N.J. at 556, then it also includes conspirators. See, e.g., State v. Harris, 141 N.J. 525, 548 (1995) (discussing whether "the actor's role was that of principal, accomplice, or co-conspirator"). Like NERA, N.J.S.A. 2C:1-6(c) "does not differentiate" based upon classifications between "principal and accomplice" or conspirator. See Rumblin, supra, 166 N.J. at 556.

Second, the statutory definitions of the word "actor" are not limited to the person who acts. N.J.S.A. 2C:1-14(e) ("'Actor' includes, where relevant, a person guilty of an omission[.]"); N.J.S.A. 2C:1-14(g) ("'actor' include[s] any natural person"). N.J.S.A. 2C:14-1(a) defines "the actor" in sex offenses as "a person accused of an offense proscribed under this act." Substituting that definition for "the actor" in N.J.S.A. 2C:1-6(c) would similarly permit the prosecution here.

Using the Supreme Court's definition of "the actor" here is further supported because the Court reached that definition by citing and examining all of the provisions using and defining "actor" in the "New Jersey Code of Criminal Justice, N.J.S.A. 2C:1-1 to 104-9." Rumblin, supra, 166 N.J. at 555 & n.1.

Moreover, the Legislature amended N.J.S.A. 2C:1-6(c) to use the term "the actor" little more than one year after the Supreme Court defined that term. The Legislature "is presumed to have been 'thoroughly conversant with its own [prior] legislation and the judicial construction of its statutes.'" J.S., supra, 223 N.J. at 75 (citation omitted); see also State v. Frye, 217 N.J. 566, 580 (2014).

As the majority opinion notes, the Supreme Court in Rumblin also "view[ed] the term in its proper syntax." Rumblin, supra, 166 N.J. at 556. However, the syntax of N.J.S.A. 2C:1-6(c) is at least as favorable as the syntax of NERA to applying the Court's definition of "the actor." N.J.S.A. 2C:1-6(c) simply requires that "the prosecution is supported by physical evidence that identifies the actor by means of DNA testing." This syntax does not require the prosecution to be of "the actor."[1] Nor does

---

[1] By contrast, five States have written their statutes of limitations' DNA exceptions to restrict the prosecution to the person whose DNA is matched. Ark. Code Ann. § 5-1-109(i) (2015) ("an indictment or information [may be] filed against the unknown person [if] the indictment contains the genetic information of the unknown person"); Iowa Code § 802.2(1) (2016) (tolling "if the person against whom the information or indictment is sought is identified through the use of a DNA profile"); Mich. Comp. Laws Serv. § 767.24(3)(b) (LexisNexis 2016) (if "evidence contains DNA that is determined to be from an unidentified individual, an indictment against that individual for the offense may be found"); Ohio Rev. Code Ann. 2901.13(D) (LexisNexis 2016) (if there is a DNA match "of an identifiable person . . . , prosecution of that person" is
(continued)

it require the prosecution to be based solely or even primarily on the DNA match, but only "supported" by such evidence. Ibid.

The Supreme Court in Rumblin could easily have read the syntax of N.J.S.A. 2C:43-7.2(c) (1997) to impose NERA's mandatory minimum sentence only on "the actor" who personally used or threatened the use of the deadly weapon, or personally caused death or serious bodily injury. The Court could have viewed the Legislature's syntax as conveying an intent that the actor who personally engages in that harmful conduct is more culpable than an accomplice, who "may be found guilty of a lower degree of a violent offense than a principal if the two did not share the same mental culpability." Rumblin, supra, 166 N.J. at 556.

Instead, the Supreme Court held that NERA applied to an accomplice who was not one of the "principals [who] purposely attempted to inflict serious bodily harm, or were armed with, or used, or threatened to use a deadly weapon." Id. at 555. The Court applied NERA to the accomplice even though he only "intended that the principals engage in the armed robbery and

_____

(continued)
tolled); Wis. Stat. § 939.74(2d)(c) (2016) (tolling when "the state may commence prosecution of the person who is the source of the biological material"). Our Legislature did not do so, though it knew how. See N.J.S.A. 2C:1-6(e) (referring to "a prosecution against the accused").

A-4417-14T1

. . . acted purposely in planning, promoting, or facilitating that robbery." Ibid.[2]

The Supreme Court "reasoned that 'the Legislature would not have intended that the mastermind of an armed robbery could avoid the consequences of [NERA] sentencing by having a confederate carry out the crime.'" Id. at 556 (quoting State v. Rumblin, 326 N.J. Super. 296, 302 (App. Div. 1999), aff'd, 166 N.J. 550 (2001)). The same reasoning could be employed here: that the Legislature would not have intended that the mastermind of an armed robbery could avoid prosecution under N.J.S.A. 2C:1-6(c) by having a confederate carry out the crime.[3]

The Supreme Court based its reasoning on the general purpose of the Act. "NERA intends to impose greater punishment upon violent criminals." Id. at 556. The Court found "no evidence in any of [the] legislative history that the Legislature intended the word 'actor' to apply solely to principals." Ibid. The Court applied to NERA its reasoning construing the Graves Act: "Surely, the Legislature intended

---

[2] The Court did not base its decision on the idea that the accomplice "causes" the serious bodily injury by planning an armed robbery, as suggested in the majority opinion.

[3] According to Tracy, it was defendant's idea to get drugs by setting up S.T. to rob him of his drugs. Defendant also contacted S.T., picked a spot where they could meet for the fake drug transaction, and then drove Tracy to a nearby location so Tracy could commit the armed robbery.

that . . . the Graves Act would apply in sentencing the accomplice. If the Legislature had a contrary intent, it could have said so. . . . The Legislature created no exception from the Graves Act." Id. at 557 (quoting State v. White, 98 N.J. 122, 130 (1984)).

Here, the general purpose of the Legislature was to toll the statute of limitation and allow prosecution "when the prosecution is supported by" DNA testing. N.J.S.A. 2C:1-6(c). There is no evidence here that the Legislature intended the word "actor" to apply solely to principals. The Legislature created no exception for conspirators or accomplices; if it had had such an intent, it could have said so.

Indeed, the Legislature rejected language in the earlier version of the proposed legislation tolling the statute of limitations only "if the identity of the person who commits a crime is unknown when the crime is committed and physical evidence is collected which can be tested for its DNA characteristics and used to identify the person who committed the crime." Assemb. B. No. A2658, at 2 (June 29, 2000); S.B. No. S1516, at 2 (Sept. 14, 2000) (emphasis added). The Legislature replaced that language with the final language using the less specific word "actor." S.B. No. S1516, at 2-3

(substituted bill Mar. 26, 2001); <u>Assemb. B. No.</u> A2658, at 3 (1st reprint Dec. 6, 2001).[4]

The Legislature's rejection of "the person who committed the crime" language, which arguably described a principal, in favor of the less specific word "actor," which can describe accomplices and conspirators, suggests an intent to apply tolling to all actors involved in the crime, not merely principals. "When a legislature includes limiting language in an earlier version of a bill but omits it from the final version, we may presume, absent contrary indicia, that no limitation was intended." <u>In re Grant of Charter Sch. Application of Englewood on Palisades Charter Sch.</u>, 320 <u>N.J.</u>

---

[4] By contrast, the statutes of limitations' DNA exceptions in some other States provide that a prosecution for an offense may be brought after DNA matching determines the identity of "the defendant," <u>Or. Rev. Stat.</u> § 131.125(10) (2016); "the accused," <u>Fla. Stat.</u> § 775.15(15), (16) (2016), <u>Ga. Code Ann.</u> § 17-3-1(d) (2015); "the offender," <u>Haw. Rev. Stat. Ann.</u> § 701-108(3)(c) (LexisNexis 2015), 720 <u>Ill. Comp. Stat. Ann.</u> 5/3-5(a) (LexisNexis 2016), <u>Ind. Code Ann.</u> § 35-41-4-2 (LexisNexis 2016), <u>Okla. Stat.</u> tit. 22, § 152(C) (2015); "the perpetrator," 42 <u>Pa. Cons. Stat.</u> § 5552(c.1) (2015), <u>Utah Code Ann.</u> § 76-1-302(3) (LexisNexis 2015); "the suspect," <u>Cal. Pen. Code</u> § 803(g)(1) (Deering 2016), <u>Kan. Stat. Ann.</u> § 21-5107(c)(1) (2015), <u>La. Stat. Ann.</u> § 572(B) (2016), <u>Mont. Code Ann.</u> 45-1-205(9) (2015), <u>Wash. Rev. Code Ann.</u> § 9A.04.080(3) (LexisNexis 2015); "a suspect," <u>N.M. Stat. Ann.</u> § 30-1-9.2(A) (LexisNexis 2015); "the person who committed the crime," <u>Utah Code Ann.</u> § 76-1-302(2)(a) (LexisNexis 2015); and "the person who allegedly committed the offense," <u>Conn. Gen. Stat.</u> § 54-193b (2015). Our Legislature did not use any of these terms in <u>N.J.S.A.</u> 2C:1-6(c), instead choosing the broader term "the actor."

Super. 174, 197 (App. Div. 1999), aff'd o.b. as modified, 164 N.J. 314, 316 (2000); see, e.g., Stancil v. Ace USA, 211 N.J. 276, 278 (2012); State v. Gandhi, 201 N.J. 161, 182-83 (2010).

The accompanying legislative statements explained that the final language "would toll the applicable statute of limitations for the commission of a crime in certain cases until the State is in possession of DNA or fingerprint evidence taken from the suspect." Statement Accompanying S.B. No. S1516, at 3 (substituted bill Mar. 26, 2001); Assemb. Jud. Comm. Statements to S.B. S1516 & Assemb. B. No. A2658, at 1 (Dec. 6, 2001) [hereinafter collectively "Final Statements"]. The Final Statements' "the suspect" is a broader term than "the person who committed the crime," and could encompass an accomplice or conspirator as well as a principal. In any event, the Legislature chose to use an even broader term, "the actor," in the statute. N.J.S.A. 2C:1-6(c).

The motion judge mistakenly relied on the original sponsors' statements using the later-rejected "person who committed the crime" language. Statement Accompanying Assemb. B. No. A2658, at 2 (June 29, 2000); Statement Accompanying S.B. No. S1516, at 2 (Sept. 14, 2000) [hereinafter collectively

"Original Statements"].[5]  As the majority opinion recognizes, little if any reliance can be placed on the Original Statements, as the Legislature rejected it in favor of different language in both the statute's text and the Final Statements.

The majority opinion does not directly cite, but echoes as a practical consideration, the Original Statements' rationale:

> Statutes of limitation establish a time period following the commission of a crime after which a prosecution cannot be commenced.  The traditional rationale for these statutes is to protect defendants from the use of "stale" evidence against them.  But this rationale has been weakened by advances in DNA technology.  DNA evidence that has been properly collected, handled and stored can reliably identify defendants many years after a crime has been committed.
>
> [Original Statements, supra.]

Notably, this rationale was not repeated in the final statement accompanying the bill ultimately adopted.  We should not adopt that rationale when the Legislature did not.

Even if the Legislature had adopted that rationale, DNA evidence that links a defendant to the scene of a crime is usually not the sole or even the principal evidence of guilt of a defendant.  Rather, it must be combined with other evidence

---

[5] Because the motion judge "resolved an issue of law in construing a statute, [his] determinations are reviewed de novo."  In re Expungement Petition of J.S., 223 N.J. 54, 72 (2015).  We must hew to that standard of review.

11                                    A-4417-14T1

and testimony showing guilt. See State v. Jones, 219 N.J. 298, 302, 314, 316 (2014) (repeatedly emphasizing that even in a sexual assault, where DNA analysis showed the defendant's semen was in the condom, "the DNA evidence was not dispositive," because "[t]his matter came down to a question of whom to believe — defendant or his accuser").

For example, the DNA evidence here supported the prosecution of defendant and Tracy, but would not be the principal evidence against either. The principal evidence in the robbery and conspiracy prosecution of Tracy or defendant would be the testimony of S.T. that there was an armed robbery, and the admission by Tracy that he and defendant conspired to commit it. The DNA evidence merely would have corroborated Tracy's admission, whether Tracy went to trial or testified against defendant. Thus, the reliability of DNA evidence does not dictate that the DNA tolling provision should be applied to Tracy but not to defendant.[6]

In any event, the Supreme Court in Rumblin did not view "the actor" as an ambiguous term, so its broad scope cannot be constrained by legislative history. "It is only when a

---

[6] Moreover, the wealth of evidence showing defendant's undisputed presence at the scene of the robbery — including S.T.'s testimony, the police investigation, and defendant's own statements to the police — is no less reliable than the DNA evidence showing Tracy's presence at the scene.

statute's language is ambiguous that the Court should resort to extrinsic aids, such as 'legislative history, committee reports, and contemporaneous construction.'" State v. Regis, 208 N.J. 439, 447 (2011) (quoting DiProspero v. Penn, 183 N.J. 477, 492-93 (2005)). Nor can the rule of lenity be applied if "the actor" as defined by the Supreme Court is not ambiguous. State v. Munafo, 222 N.J. 480, 493 n.2 (2015).

The motion judge emphasized that N.J.S.A. 2C:1-6(c) refers to "the actor" in the singular. The majority opinion notes that the sponsors' statements for the amended bills referred to "the suspect." Final Statements, supra. However, the Final Statements, like the statutory language, does not restrict prosecution to the actor or the suspect, but "toll[s] the applicable statute of limitations for the commission of a crime." Ibid.[7]

In any event, the Legislature has instructed that the singular should be read as including the plural. "Whenever, in describing or referring to any person [or] party, . . . any word importing the singular number . . . is used, the same shall be understood to include and to apply to several persons or parties

---

[7] Similarly, the Original Statements, supra, stated that the bills "remove[d] time limitations on the prosecution of crimes" and provided that "authorities would not be barred from prosecuting such crimes." Ibid.

as well as to 1 person or party[.]" <u>N.J.S.A.</u> 1:1-2. To assume there can only be one "actor" in a crime "runs counter to the general rule of construction in . . . statutory interpretation that singular terms in a statute include the plural form of the term," <u>Wiese v. Dedhia</u>, 354 <u>N.J. Super.</u> 256, 261 (App. Div. 2002), <u>certif. denied</u>, 175 <u>N.J.</u> 546 (2003), and "is not persuasive," <u>State v. Toth</u>, 354 <u>N.J. Super.</u> 13, 20 (App. Div. 2002).

Such an assumption also runs contrary to common sense and common experience. Crimes are frequently committed by more than one actor. Indeed, the crime of conspiracy requires that the actor conspire and agree with "another person." <u>N.J.S.A.</u> 2C:5-2(a); <u>see also</u> <u>State v. Del Fino</u>, 100 <u>N.J.</u> 154, 160 (1985). Moreover, in crimes committed by multiple perpetrators, interpreting the tolling provision to apply only to the actor whose DNA is matched to physical evidence at the scene would allow the other criminal participants to escape prosecution when the DNA match solves a cold case. Such an interpretation would enable the leaders of conspiracies to evade prosecution under <u>N.J.S.A.</u> 2C:1-6(c) by having the crime committed by minions, who alone could be prosecuted when the minion's DNA is matched.

Such an outcome would be avoided by applying the Supreme Court's reasoning that the Legislature would not have intended

that the mastermind could avoid the consequences of the DNA tolling provision by having a confederate carry out the crime. See Rumblin, supra, 166 N.J. at 555. Indeed, the Supreme Court found the Legislature meant to include all accomplices in the "actor," holding that "for NERA purposes principals and accomplices are treated the same." Id. at 556.

By not applying here the Supreme Court's definition and analysis in Rumblin, the majority opinion prevents the prosecution of all other accomplices, co-conspirators, and masterminds when DNA analysis cracks "dormant or 'cold' cases." See State v. L.H., 206 N.J. 528, 532 (2011) (Long, J., concurring) (quoting id. at 550 (Rivera-Soto, J., concurring)).[8] This ruling will significantly limit the ability to use N.J.S.A. 2C:1-6(c) to prosecute cold cases. See State v. Michaels, 219 N.J. 1, 48 (considering the "real likelihood that . . . dilemmas may arise in cold cases" as a reason not to apply the Confrontation Clause rigidly), cert. denied, __ U.S. __, 135 S. Ct. 761, 190 L. Ed. 2d 635 (2014).

---

[8] In L.H., all six Justices agreed to vacate the award to a defendant, identified by DNA match ten years after the crime, of gap-time credits, id. at 528, which the State argued "neutralize[d] sentences on cold cases," id. at 542-43 (Rivera-Soto, J., concurring).

"[T]he Legislature [has] declared that 'DNA databanks are an important tool in criminal investigations.'" State v. O'Hagen, 189 N.J. 140, 148 (2007) (quoting N.J.S.A. 53:1-20.18). The Supreme Court has made clear that "[t]here is no constitutional bar to using [DNA test results] in helping to solve a crime, regardless of when the crime was committed." A.A. ex rel. B.A. v. Attorney Gen. of N.J., 189 N.J. 128, 140 (2007).[9] The Legislature, which permits the prosecution of cold cases such as homicide and aggravated sexual assault "at any time," amended N.J.S.A. 2C:1-6 to toll the five-year statute of limitations to permit prosecution of cold cases in all other crimes "when the prosecution is supported by" a DNA match. N.J.S.A. 2C:1-6(a), (c). Today's ruling significantly reduces the ability to use that important tool in cold cases.

---

[9] Indeed, some States have written their statutes of limitations' DNA exceptions to authorize prosecutions without any limitation on who is prosecuted. Del. Code Ann. tit. 11, § 205(i) (2016) ("a prosecution for any offense in this title may be commenced within 10 years after it is committed if based upon forensic DNA testing"); Minn. Stat. § 628.26(f) (2016) (exempting indictments or complaints "if physical evidence is collected and preserved that is capable of being tested for its DNA characteristics"); Tex. Code Crim. Proc. Ann. art. 12.01(1)(C)(i) (West 2016) (no time limit if "during the investigation of the offense biological matter is collected and subjected to forensic DNA testing and the testing results show that the matter does not match the victim or any other person whose identity is readily ascertained").

The case before us provides an example of the unfortunate consequences of failing to apply the Supreme Court's definition of "the actor." Even more compelling examples are easily imagined. For example, several masked robbers shoot and severely injure many jewelry store employees and customers. DNA or fingerprint evidence from the steering wheel of the getaway car is later matched to the getaway driver, which enables the police to identify the shooters, who are found to have the guns and jewels evidencing their guilt. Under the majority opinion, however, only the getaway driver can be prosecuted. Similarly, the kidnapping of a toddler is solved when the DNA or fingerprint on the released child's clothing is later matched to the spouse of the kidnapper, who was an accessory after the fact but regretted her role and released the child. Even though the ransom note is saved on the kidnapper's computer, only the accessory after the fact can be prosecuted under the majority opinion.

The majority opinion stresses that in this case, the DNA evidence led simply to a confession which named defendant. However, the testimony of an accomplice or co-conspirator is a widely-used basis to prove criminal cases; it must "be given careful scrutiny," but if believed it "alone" can be sufficient to convict. <u>Model Jury Charge (Criminal)</u>, "Testimony of a

Cooperating Co-Defendant or Witness" at 2 (2006). Moreover, as in the examples above, an actor's DNA evidence can lead to indisputably reliable evidence against the mastermind or other perpetrators, whose prosecution is foreclosed by the majority opinion. Most importantly, we must consider whether the Legislature intended that all other masterminds, principals, accomplices and co-conspirators in all future cases be exempt from prosecution whenever a DNA match of an actor cracks a cold case.

Those unfortunate consequences would be avoided if the Supreme Court's definition in Rumblin of "actor" was applied to N.J.S.A. 2C:1-6(c). There are strong reasons to apply that definition here. First, the Supreme Court looked beyond NERA to how "actor" was used and defined throughout the New Jersey Code of Criminal Justice. Second, the Legislature is presumed to have known the Supreme Court's recent definition of "the actor" when it used that term in N.J.S.A. 2C:1-6(c). Third, the Legislature rejected more restrictive language when it adopted the term. Finally, using the Supreme Court's definition serves the Legislature's goal of using DNA evidence to solve cold cases, and avoids the serious and unfortunate consequences produced by the majority opinion's reading. For these reasons,

I cannot join the majority opinion's view that the Supreme Court's definition of "the actor" should not be applied here.

I respectfully dissent.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION